STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
MICHAEL WHITEHEAD, DEFENDANT-APPELLANT.

Argued May 8, 1979—Decided June 20, 1979.

344

*Mr. Gerald P. Boswell* and *Ms. Marilyn J. Morheuser,*
Assistant Deputy Public Defenders, argued the cause for

appellant (*Mr. Stanley C. Van Ness,* Public Defender of New Jersey, attorney; *Mr. Boswell* and *Ms. Morheuser,* of counsel and on the brief).

*Ms. Andrea R. Grundfest,* Assistant Essex County Prosecutor, argued the cause for respondent ,(*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Donald S. Coburn,* Essex County Prosecutor, of counsel; *Ms. Grundfest* and *Mr. Frank J. Cozzarelli,* Assistant Essex County Prosecutor, on the brief).

The opinion of the court was delivered by

SULLIVAN, J. Defendant was convicted by a jury verdict of second degree murder while armed. At the time of sentencing, defense counsel objected to the use of sentencing guidelines formulated for Essex County. However, the trial judge stated that the material in the guidelines was informational only and not binding on the sentencing judge in any sense. Defendant was then sentenced to a term in State Prison aggregating not less than 11 nor more than 22 years.

After an appeal had been filed, a consent order was entered by the Appellate Division remanding the matter to the trial court for the limited purpose of enlarging the record with regard to the sentencing procedures employed by the trial court. Jurisdiction was retained by the Appellate Division. The trial judge held a lengthy hearing on the subject of the remand, at the conclusion of which he filed a formal opinion, reported in 159 *N. J. Super.* 433 (Law Div. 1978). This Court then granted direct certification of the entire pending appeal. 77 *N. J.* 498 (1978). We affirm.

The salient facts of the homicide are as follows:

The victim, Kim Washington, and his friend, Ernest Hite, had driven to a luncheonette in Newark about 1:00 A.M. on a Saturday morning. A crowd varying in size from 15 to 40 persons was gathered in and around the luncheonette. Hite, who was driving, double-parked the car in front of the store and he and Washington went inside. While there, they met

Syvellus Booker, a half-brother of Washington, and the three then left. On the way back to the car Washington exchanged words with someone on the sidewalk. That person followed him to the car and, as Washington got in the passenger seat and tried to close the car door, the other held on to the door, reached in with a gun in his hand and shot Washington in the head. Hite, who was in the driver's seat at the time, identified defendant as the assailant and described the gun used as having a white handle. Booker, who was standing by the car when the shooting took place and who knew defendant, also identified defendant as the person who had accosted Washington on the sidewalk, followed him to the car and then shot him with a white-handled gun. Another witness testified that a few hours before the shooting he had seen defendant rob three persons while holding a pistol with a white handle.

Following the shooting, defendant fled to North Carolina and Virginia where he remained for about six weeks. He then returned and surrendered to the police. At trial defendant testified in his own defense and admitted his presence at the scene but said he was not near the car when the shooting took place. He identified a person named Dennis Knox as the gunman. He maintained that he had fled, not because of guilt, but from fear of retaliation by friends of Washington. He also said that he was afraid of Dennis Knox with whom he would have to deal. The following exchange then took place on cross-examination of defendant by the prosecutor.

Q. You have to deal with Dennis Knox because you just said under oath —

A. I told that Dennis Knox did the shooting, and if you want me to sign a paper I will sign a paper saying Dennis Knox did the shooting.

Q. What did you say about signing a paper?

A. If you want me to sign, I will sign saying that Dennis Knox.

Q. You signed a paper in April when you were charged for murder?

A. Today in this courtroom, not April: today.

Q. Why did you wait until today when you are on trial yourself?

This last question was unanswered as the trial court sustained an objection to it.

In his appeal, defendant makes several contentions of trial error. He also attacks the Essex County sentencing guidelines as illegal and improper and their use as prejudicial.

■ First, he contends it was error for the State to be permitted to produce testimony that defendant had robbed three persons a few hours prior to the shooting. This "other crime" evidence, defendant alleges, was intrinsically prejudicial to his right to a fair trial. The contention lacks merit. The evidence, if believed, showed that shortly before the shooting defendant was in possession of a gun similar to the one used when Washington was shot. It was properly admitted for this limited purpose.

Second, it is charged that the State violated the discovery rules and deprived defendant of a fair trial by failing to disclose that Washington, the murder victim, was the co-defendant of State's witness Syvellus Booker in a pending armed robbery charge. The defense had been told of the criminal charge pending against Booker, but apparently did not learn that Washington had also been indicted on the same charge until after the trial had ended. Defendant argues that, in some unspecified way, this information could have been used to attack Booker's credibility. The trial judge on a motion for a new trial rejected this contention. We do also.

■ The State has an obligation to disclose material evidence affecting the credibility of its witnesses. *State v. Carter,* 69 *N. J.* 420, 432–433 (1976). This obligation to disclose, in the absence of a proper inquiry, depends basically on the materiality of the subject matter. *Id.* at 433. However, in the instant case, the alleged materiality of the information not furnished is so tenuous, and defendant's proposed use of it so speculative, that it cannot be said that defendant was denied a fair trial on that account.

■ Defendant contends, third, that the question put to him on cross-examination by the prosecutor, "Why did you wait

until today when you are on trial yourself?" (to say that Dennis Knox had shot Washington), infringed on defendant's constitutional right to remain silent. He contends that the question suggested to the jury that defendant's failure to have previously informed the police indicated that his courtroom testimony had been a recent fabrication. In support of this argument reference is made to the fact that after the jury retired to deliberate on a verdict it submitted the following question to the court: "When was the first time the name Dennis Knox appeared?" In answer the jury was told it would have to rely on its own recollection of the testimony but that it could request to have the testimony of any witness read.

Assuming the question was improper under *Doyle v. Ohio*, 426 *U. S.* 610, 96 *S. Ct.* 2240, 49 *L. Ed.* 2d 91 (1976); *State v. Lyle*, 73 *N. J.* 403 (1977) and *State v. Deatore*, 70 *N. J.* 100 (1976), the objection to it was sustained by the trial court and it went unanswered. Thereafter, the prosecutor made no further reference to or comment on the subject. No cautionary instruction was requested nor given other than a standard instruction after the summations that "the questions that the lawyers ask are not evidence" unless answered.

In the overall picture we are satisfied that the error, if any, was harmless beyond a reasonable doubt and cannot be said to have influenced the verdict. As we noted in a somewhat similar situation:

The whole incident occupied only a few lines, as far as the jury was concerned in the transcript of a trial lasting more than three days and the subject matter was not referred to thereafter in summation or in any other way.

*State v. Alston*, 70 *N. J.* 95, 98 (1976).

Here, too, in view of the relative insignificance of the statement as well as the overwhelming proof of defendant's guilt, we find no reversible error in the incident.

Defendant also makes a broadside attack on the Essex County sentencing guidelines, raising numerous complex

issues as to their validity, statistical foundation and the like. We decline to consider these arguments. The guidelines are no longer in use, having been superseded by statewide guidelines effective since October 1978. The sentencing judge made it clear that he considered the guidelines informational only and not binding on him in any sense. Indeed, the sentence which he imposed was not based on the guidelines. The judge noted that the guidelines for second degree murder indicated a median sentence of 15 years. Nevertheless, on the conviction of second degree murder, he imposed a minimum sentence of 10 years and a maximum of 20 years. To that was added a consecutive term of not less than one year nor more than two years on the conviction for being armed, making an aggregate sentence of 11 to 22 years. In these circumstances, defendant lacks standing to make an abstract attack on the formulation and composition of guidelines not relied upon and no longer in use.

■ Finally, we consider the claim of a manifestly excessive sentence. Defendant submits that as a youthful offender with no prior adult record he should have been sentenced to an indeterminate term at the Youth Correctional Institution Complex at Yardville in accordance with the philosophy expressed by this Court in *State v. McBride,* 66 *N. J.* 577, 580 (1975).

We have recently had occasion to emphasize the broad discretion vested in a trial judge in fixing an appropriate sentence in a criminal case. See *State v. Whitaker,* 79 *N. J.* 503 (1979). While recognizing appellate power to modify a sentence that is manifestly excessive, we stated that the power should be exercised sparingly and only upon a clear showing of abuse of discretion. *Id.* at 512. See also *State v. Leggeadrini,* 75 *N. J.* 150, 156–157 (1977).

Here the trial judge characterized the homicide as a virtual execution and the proof of defendant's guilt as overwhelming. Because of this he stated that a substantial term was required as punishment. He added that it was also required as a general deterrent since it was clear at trial

that the shooting grew out of a conflict between two rival family groups. Under these circumstances, the judge stated that considerations of rehabilitation were subsidiary. However, he did recommend that defendant serve his sentence at Yardville. The record fully supports the trial judge's evaluation of the crime and the sentence imposed for its commission.

Affirmed.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For reversal*—None.