266 N.J. Super. 560 (1993)
630 A.2d 348
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
GERARDO JIMENEZ, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted June 15, 1993.
Decided July 29, 1993.
*563 Before Judges MICHELS, BILDER and BAIME.
Robert J. Del Tufo, Attorney General, attorney for appellant (Arthur S. Safir, Deputy Attorney General, of counsel and on the brief).
Zulima V. Farber, Public Defender, attorney for respondent (Susan Green, Assistant Deputy Public Defender, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
The State appeals from the Law Division's order granting defendant's petition for post-conviction relief and vacating the remainder of his parole ineligibility term imposed under N.J.S.A. 2C:35-7. The Law Division held that the prosecutor abused his discretion by failing to engage in post-conviction negotiations with defendant under N.J.S.A. 2C:35-12 and by refusing to waive the mandatory period of parole ineligibility. The Law Division also held that the guidelines adopted by the Attorney General and the county prosecutors in response to the Supreme Court's opinion in State v. Vasquez, 129 N.J. 189, 609 A.2d 29 (1992) and our decision in State v. Gonzalez, 254 N.J. Super. 300, 603 A.2d 516 (App.Div. 1992) are arbitrary and capricious because they permit a waiver of a mandatory sentence following a conviction only if the defendant cooperates with law enforcement officials in ferreting out criminal conduct. We are thoroughly convinced that the prosecutors' guidelines, both facially and as applied here, comport with constitutional requirements and that defendant failed to satisfy the *564 heavy burden of proving the State's failure to offer leniency constituted an arbitrary and capricious exercise of discretion.[1]

I.
Tried by a jury, defendant was convicted of possession of cocaine with intent to distribute (N.J.S.A. 2C:35-5a(1) and 5b(3)), possession of the same drug with intent to distribute near a school zone (N.J.S.A. 2C:35-7), distribution of the same drug (N.J.S.A. 2C:35-5a(1) and 5b(3)), distribution of the same drug near a school zone (N.J.S.A. 2C:35-7), and possession of the same drug (N.J.S.A. 2C:35-10a(1)). After merging the conviction for simple possession, the trial judge imposed a concurrent four year sentence on each count. On the convictions for possession of cocaine with intent to distribute and distribution of the same drug near a school zone, separate concurrent three year parole disqualifiers were imposed pursuant to N.J.S.A. 2C:35-7. In an unreported opinion, we affirmed defendant's convictions, but merged the separate counts. The Supreme Court subsequently denied certification.
Defendant then filed a petition for post-conviction relief in which he contended, among other things, that the prosecutor improperly failed to engage in post-conviction negotiations and did not state his reasons for refusing to waive the mandatory period of parole ineligibility required by N.J.S.A. 2C:35-7.[2] It was also argued *565 that the prosecutors' guidelines were not existent at the time of the original sentencing hearing and that their later promulgation violated the ex post facto prohibition. In response, the prosecutor argued that it was not incumbent upon him to engage in post-verdict negotiations or to waive the mandatory sentence. Pointing to defendant's undisputed eleven year history of drug abuse and his failure at any time to cooperate with law enforcement authorities, the prosecutor asserted that his refusal to waive the mandatory term required by N.J.S.A. 2C:35-7 did not constitute an arbitrary and capricious exercise of discretion.
The Law Division granted defendant's petition on the ground that the prosecutor's refusal to grant lenity under N.J.S.A. 2C:35-12 was unfair and improper. In a letter opinion issued in response to the State's motion for reconsideration, the Law Division reaffirmed its prior decision, finding that the prosecutor's refusal to consider anything other than an offer to cooperate once the defendant was convicted by a jury constituted arbitrary and capricious conduct. The Law Division observed that prosecutorial guidelines permitted the State to consider a broad array of mitigating factors in deciding whether to enter a plea agreement, but focused too narrowly on the defendant's willingness to cooperate following a conviction. The court suggested that the defendant's amenability to treatment and rehabilitation should generally be considered by a prosecutor in deciding whether to grant lenity. Citing defendant's drug addiction, lack of a criminal record, and family background, the court vacated the remainder of his parole ineligibility term.
It is against this backdrop that we consider the issues presented.

II.
We commence our analysis with a brief description of the Comprehensive Drug Reform Act of 1986 (N.J.S.A. 2C:35-1 through -23) and recent judicial decisions construing its provisions. The articulated objectives of the Act are set forth in the *566 Legislature's declaration of policy and findings, and include the "imposition of a uniform, consistent and predictable sentence for a given offense ... [as] an essential prerequisite to [a] rational deterrent scheme designed ultimately to reduce the incidence of crime." N.J.S.A. 2C:35-1.1a. The Legislature also declared it to be the policy of this state to afford "special protection to children from the perils of drug trafficking ... [by providing] especially stern punishment for those drug offenders who operate on or near schools...." N.J.S.A. 2C:35-1.1c. To implement these policies, the Legislature enacted N.J.S.A. 2C:35-7, which was designed to "create[] a drug `safety zone' around schoolyards." 1987 Legislative Assembly Judiciary Committee Commentary to the Comprehensive Drug Reform Act (L. 1987, c. 101, § 1), reprinted in Cannel, New Jersey Criminal Code Annotated, comment 1 to N.J.S.A. 2C:35-7 (1992-93). That statute prohibits the possession of a controlled dangerous substance with intent to distribute or the distribution of the same drug within 1,000 feet of school property used for school purposes. N.J.S.A. 2C:35-7; see State v. Thomas, 132 N.J. 247, 252, 624 A.2d 975 (1993). With minor exceptions inapplicable here, any person who violates this section must be sentenced to a term of imprisonment and may not be paroled for three years. N.J.S.A. 2C:35-7.
While adopting these mandatory penalties, the Legislature clearly wished to accord the State some flexibility, and thus allowed for plea bargaining and post-verdict negotiations. See Cannel, New Jersey Criminal Code Annotated, comment to N.J.S.A. 2C:35-12 (1992-93). Although N.J.S.A. 2C:35-7 provides for a mandatory sentence and period of parole ineligibility for distribution-type offenses that occur near school property, N.J.S.A. 2C:35-12 permits a sentencing judge to relax that requirement where there has been a plea agreement or a post-verdict agreement between the prosecutor and the defendant. Significantly, the primary objective of the Legislature in enacting this section was to provide an incentive to offenders to assist law *567 enforcement efforts in the war against illegal drugs. The Legislature's comments leave no room for doubt as to this point:
It is essential in drug cases that prosecutors be able to secure the cooperation (in the form of confidential information and testimony) of certain lower and middle level drug offenders to be able to identify, apprehend, prosecute and convict the more culpable, higher echelon members in a given drug distribution network. For this reason, one of the key objectives of this section and of the act is to provide persons engaged in illicit drug activities with strong incentives to cooperate with law enforcement to overcome the perceived and substantial risks associated with turning State's evidence and exposing their superiors, suppliers and affiliates.
* * * * * * * *
This section expressly recognizes that a plea agreement is essentially a form of contract between the State and a defendant which is ratified and enforced by the courts. Under current law, it is established that the court may not impose a sentence greater than that contemplated by a plea agreement, since this would be deemed to violate the defendant's understanding of his agreement to enter a guilty plea. Courts are free under current law, however, to impose a lesser sentence than that contemplated by a negotiated agreement, and may even elect to suspend the imposition of sentence altogether. This section expressly precludes a court from imposing a lesser prison term or fine than that expressly mandated by a plea agreement.
* * * * * * * *
A post-conviction agreement is also authorized by this section, which may be consummated at any time after a guilty verdict, including after the imposition of sentence. An offender who is sentenced to prison, for example, could belatedly decide to cooperate with law enforcement. In such event, where the prosecutor consents and joins in the application, and provided that the court does not find that the interests of justice would not be served by effectuating the terms of the post-conviction agreement, the defendant would be entitled to be resentenced by the court to any term which could originally have been imposed pursuant to a negotiated plea agreement. [1987 Legislative Assembly Judiciary Committee Commentary to the Comprehensive Drug Reform Act (L. 1987, c. 106, § 1), reprinted in, Cannel, New Jersey Criminal Code Annotated, comment to N.J.S.A. 2C:35-12 (1992-93)].
Thus, while the Legislature tempered its professed goal of strict punishment and sentence uniformity by authorizing waiver of the mandatory minimum prison term in N.J.S.A. 2C:35-12, the flexibility so accorded was designed to aid law enforcement efforts to penetrate the drug-trafficking hierarchy by securing cooperation of lower and middle level drug offenders. See State v. Bridges, 131 N.J. 402, 408, 621 A.2d 1 (1993); see also State v. Shaw, 131 N.J. 1, 15, 618 A.2d 294 (1993).
*568 In State v. Vasquez, 129 N.J. at 189, 609 A.2d 29, the constitutionality of these sections was challenged on the ground that they impermissibly delegated judicial sentencing power to the prosecutor. Relying on its decision in State v. Lagares, 127 N.J. 20, 601 A.2d 698 (1992), which involved the constitutionality of the repeat-offender statute (N.J.S.A. 2C:43-6f), and our opinion in State v. Gonzalez, 254 N.J. Super. at 300, 603 A.2d 516, which pertained to the statutory sections at issue here, the Court concluded that these provisions would be unconstitutional if read literally, given their lack of guidance and absence of any avenue for effective judicial review. 129 N.J. at 195-96, 609 A.2d 29. To cure this constitutional defect, the Court interpreted N.J.S.A. 2C:35-12 to require that guidelines be adopted to assist prosecutorial decision-making with respect to the waiver of mandatory sentences. Id. at 196-97, 609 A.2d 29. The Court said that "[j]udicial oversight is mandated to protect against arbitrary and capricious prosecutorial decisions." Id. at 196, 609 A.2d 29. To that end, the Court required prosecutors to "state on the record the reasons for the decision to waive or the refusal to waive the parole disqualifier."[3]Ibid. The Court added, "[a] defendant who shows clearly and convincingly that the exercise of discretion was arbitrary and capricious [is] entitled to relief." Ibid. So construed, the statute was said to comport with the requirement of the separation of powers doctrine. Id. at 197, 609 A.2d 29.
Prosecutorial guidelines were promulgated by the Attorney General on September 15, 1992. Report of the Uniform Narcotics *569 Charging and Disposition Working Group, Directive 9.1, at 18-20 [Prosecutors' Guidelines]; see also Robert J. Del Tufo, Directive Implementing Guidelines Governing Plea-Bargaining and Discretionary Decisions in Drug Prosecutions Involving Mandatory Terms (1992). Broadly stated, the guidelines "recognize that although the predominant purpose of the section 12 waiver was to give `strong incentives to cooperate with law enforcement ...,' that is not the only law-enforcement purpose to be served...." State v. Shaw, 131 N.J. at 11, 618 A.2d 294 (citations omitted). For example, consideration of the "nature and strength of the pending case" reflects a weighing of prosecutorial interests. Prosecutors' Guidelines, at 19. Other objectives are to ensure the most efficient "dedication of limited investigative, prosecutorial, judicial and correctional resources," and "to facilitate where feasible the rehabilitation of drug dependent persons." Ibid.
In the context of post-verdict agreements, however, the guidelines have a narrower focus. Specifically, guideline 3 provides that "[n]o post-conviction agreement shall be tendered or accepted unless the defendant enters into a cooperation agreement of substantial value to the prosecution." Guideline 9 supplements this directive by providing that a defendant's cooperation, both in the context of a plea bargain and a post-conviction agreement, may take the form of "aid[ing] ... the identification, investigation, apprehension and prosecution of collaborators, co-conspirators, suppliers and superiors in a drug trafficking scheme" or "provid[ing] intelligence information concerning the nature, methods or activities of the drug distribution network...."

III.
We now turn to the pivotal issue in this case. We conclude that the prosecutor did not abuse his discretion when he refused to waive the mandatory minimum term and that the guidelines adopted by the Attorney General satisfy constitutional standards. Specifically, we hold that a prosecutor may generally condition a post-verdict waiver on the defendant's cooperation. *570 While perhaps there may be situations in which a prosecutor's rigid insistence upon the defendant's assistance in ferreting out crime might so offend the interests of justice as to compel judicial intervention, see State v. Cengiz, 241 N.J. Super. 482, 492-93, 575 A.2d 504 (App.Div.) (Shebell, J.A.D., dissenting), certif. denied, 122 N.J. 402, 585 A.2d 400 (1990), we need not decide that issue here. Instead, we adhere to the "settled principle against resolving disputes in advance of constitutional necessity," State v. Jones, 198 N.J. Super. 553, 559, 487 A.2d 1278 (App.Div. 1985), and express no opinion on the subject. We hold that guideline 3 is facially constitutional and constitutional as applied. We also conclude that defendant utterly failed to establish an abuse of prosecutorial discretion.
We are not at all troubled by the prosecutor's reluctance to consider defendant's family background, drug addiction, and other purported mitigating factors in deciding whether to waive the mandatory sentence following the trial. There is nothing constitutionally offensive in the fact that a prosecutor may be less willing to waive a mandatory sentence after a trial than he is before a conviction. We recognize that punishment should not exceed what a person and his offense would warrant merely because he proceeds to trial. A defendant has a right to defend, and a sentencing judge may not enhance the penalty because he contests his guilt. See N.J.S.A. 2C:44-1c(1). However, it is equally well-settled that "[p]rosecutors may ... reasonably consider early disposition as an important law-enforcement objective," thus permitting the State to marshal and harness scarce investigative resources. State v. Shaw, 131 N.J. at 13, 618 A.2d 294. "Not only does early disposition maximize efficiency, it also furthers ... rehabilitation." Ibid. In assaying the prospects for rehabilitation, a prosecutor must look at the person as well as the offense, and it is here that a defendant's attitude toward the truth may be especially relevant. "The first step in reform and rehabilitation is the acceptance of personal responsibility by the drug-dependent person." Ibid. A prosecutor may thus find in a plea of guilty *571 some promise that the defendant can be rehabilitated by a lesser punishment than the circumstances might otherwise require. Cf. State v. Poteet, 61 N.J. 493, 497, 295 A.2d 857 (1972). The State has "a legitimate interest in encouraging the entry of guilty pleas and in facilitating plea bargaining, a process mutually beneficial to both the defendant and the [prosecutor]." Corbitt v. New Jersey, 439 U.S. 212, 222, 99 S.Ct. 492, 499, 58 L.Ed.2d 466, 476 (1978). We thus find nothing amiss in the fact that the prosecutor may have been less inclined to grant lenity after trial than he was before the conviction.
So too, the prosecutor's insistence on defendant's cooperation as a prerequisite to waiver of the mandatory sentence was not unreasonable. It is undisputed that defendant had a long history of drug abuse. It can fairly be assumed that he knew where and from whom drugs could be purchased. Defendant's failure to aid the State in coping with crime could reasonably be considered by the prosecutor in refusing to grant leniency. We can reasonably infer that the Legislature would not intend "to tie the hands of prosecutors to a grant of lenity" when the defendant shows no sincere contrition and makes no real effort at rehabilitation. State v. Shaw, 131 N.J. at 14, 618 A.2d 294.
In State v. Gonzalez, we said that "a prosecutor's considerations in determining whether to waive a mandatory sentence may encompass factors other than those normally attendant to sentencing decisions under N.J.S.A. 2C:44-1a and b," and thus "[b]road judicial oversight powers might ... impinge upon executive law enforcement functions." 254 N.J. Super. at 308, 603 A.2d 516. We therefore adopted the principle that, in the absence of arbitrary and capricious prosecutorial conduct, trial judges should defer to the State in determining whether a mandatory sentence should be waived. Our thorough examination of the record here convinces us that the Law Division intruded upon the domain of the prosecutor. Defendant failed to demonstrate that the prosecutor's decision to deny leniency constituted an arbitrary and capricious exercise of discretion.

*572 IV.
We now address defendant's argument that N.J.S.A. 2C:35-12 was constitutionally defective when his sentence was originally pronounced and that its subsequent cure by promulgation of the prosecutorial guidelines may not be applied retroactively to him. Lagares, Vasquez and Gonzalez were decided after defendant was sentenced. He thus contends that N.J.S.A. 2C:35-12 was unconstitutional at the time sentence was imposed and that the ex post facto prohibition bars application of the Court's saving construction as to him.
We reject this contention. In Beazell v. Ohio, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), the United States Supreme Court defined the term ex post facto as follows:
... [A]ny statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto. The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.
[Id. at 169-70, 46 S.Ct. at 68-69, 70 L.Ed. at 217-18].
Measured against this time-tested definition, our Supreme Court's saving construction of N.J.S.A. 2C:35-12 and the guidelines that were later adopted by the Attorney General and the county prosecutors do not make more burdensome the punishment for a crime after its commission. Nor do they incriminate formerly innocent conduct or deprive a defendant of a defense he had when the crime was committed. The opposite is true. A defendant subject to a mandatory sentence now has an avenue for relief which he did not previously enjoy. Application of the guidelines does not offend any of the policies that underlie the ex post facto prohibition. We discern no constitutional bar precluding application of the mandatory sentence statute in this case.
*573 Accordingly, the Law Division's order granting defendant's petition for post-conviction relief is reversed and the mandatory term of parole ineligibility is reinstated.
NOTES
[1] Because of the importance of the issue presented and the strong probability that it will recur, we decide the question on the merits. We do not reach the issue whether the sentence was subject to review in post-conviction relief proceedings. See R. 3:22-2(c); R. 3:22-12; see also State v. Flores, 228 N.J. Super. 586, 550 A.2d 752 (App.Div. 1988), certif. denied, 115 N.J. 78, 556 A.2d 1220 (1989).
[2] As we will note later in our opinion, decisions requiring the prosecutor to promulgate guidelines and state reasons for waiving or refusing to waive a mandatory sentence had not yet been rendered at the time of the original sentencing hearing. The guidelines were in place, however, when defendant filed his petition for post-conviction relief.
[3] In State v. Gonzalez, we said that the prosecutor's duty to state his reasons for refusing to waive a mandatory sentence is "triggered only where the defendant makes an initial showing of arbitrariness by `moving papers designed to convince the ... judge that [a] hearing on the issue is warranted.'" Id. at 309, 603 A.2d 516 (quoting State v. Alvarez, 246 N.J. Super. 137, 148, 586 A.2d 1332 (App.Div. 1991)). Although the Supreme Court adopted most of the principles enunciated in Gonzalez, its opinion in Vasquez is silent on this point. We do not reach the question of the continuing viability of our holding in Gonzalez on this matter. We hasten to add, however, that the preferable course, at least until the issue is decided, is for the prosecutor to state the reasons underlying the waiver decision.