278 N.J. Super. 589 (1995)
651 A.2d 1068
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WALTER PRESS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1994.
Decided January 26, 1995.
*590 Before Judges STERN, KEEFE and HUMPHREYS.
Daniel V. Gautieri, Assistant Deputy Public Defender, argued the cause for appellant (Susan L. Reisner, Public Defender, attorney; Mr. Gautieri, of counsel and on the brief and reply letter brief).
Robin Parker, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General, attorney; Ms. Parker, of counsel and on the letter brief).
The opinion of the court was delivered by HUMPHREYS, J.S.C. (Temporarily Assigned).
The defendant sold cocaine to an undercover police officer within 1,000 feet of the P.J. Hill Elementary School in Trenton. The Legislature has prescribed a mandatory minimum penalty for this crime of three years imprisonment during which the defendant will be ineligible for parole. N.J.S.A. 2C:35-7. The Legislature has also authorized the prosecutor to waive the mandatory minimum prison term in whole or in part. See N.J.S.A. 2C:35-12.
*591 In this case, the prosecutor entered into a plea agreement with the defendant in which the prosecutor agreed to a reduction of the three year minimum prison term to one year. The prosecutor also agreed to dismiss other charges. The defendant pled guilty and was sentenced to one year in prison pursuant to the plea agreement.
The defendant appeals his sentence contending that he was unfairly and illegally sentenced. He argues that if he had committed the crime in certain other counties, the prosecutors there would have agreed to a lesser sentence, namely 364 days in the county jail as a condition of probation. The defendant reasons that therefore, notwithstanding his voluntarily entered plea agreement, he too must receive the lesser county jail sentence. We disagree.

I
The Comprehensive Drug Reform Act of 1986 ("Act"), N.J.S.A. 2C:35-1 et seq., provides for a mandatory minimum custodial sentence between one-third and one-half of the sentence imposed but no less than three years for a person selling certain drugs within 1,000 feet of a school. N.J.S.A. 2C:35-7. This provision reflects "the Legislature's intention to impose heavy penalties on drug offenders ... In promulgating the school-zone statute, the Legislature intended to keep school zones drug-free in order that schools can effectively educate children about the dangers of drug use." State v. Dillihay, 127 N.J. 42, 53, 601 A.2d 1149 (1992).
The statute also provides that the prosecutor may enter into a plea agreement with the defendant in which the prosecutor waives the three year minimum in whole or part. N.J.S.A. 2C:35-12. The constitutionality of the Act was challenged on the ground that the ability to waive gave the prosecutor sentencing power in violation of the separation of powers doctrine. See State v. Shaw, 131 N.J. 1, 618 A.2d 294 (1993); State v. Vasquez, 129 N.J. 189, 195, 609 A.2d 29 (1992); State v. Peters, 129 N.J. 210, 609 A.2d 40 (1992). The Supreme Court upheld the constitutionality of the Act *592 by requiring that the prosecutor's exercise of a waiver be subject to judicial oversight. Vasquez, supra, 129 N.J. at 196, 609 A.2d 29. The Court stated that the prosecutor should indicate on the record the reasons for the waiver decision. Ibid. The defendant would be entitled to relief if the defendant could show clearly and convincingly that the prosecutor's exercise of discretion was arbitrary and capricious. Ibid.
The Court also interpreted the statute to require that guidelines as described in State v. Lagares, 127 N.J. 20, 32, 601 A.2d 698 (1992), be adopted to assist prosecutorial decision making. The Supreme Court in Lagares had stated that "[b]ecause we are not familiar with all of the factors that law enforcement agencies might consider significant in determining whether a defendant should be exempted from an extended sentence, we request that the Attorney General, in consultation with the various county prosecutors, adopt guidelines for use throughout the state. Such guidelines will promote uniformity and provide a means for prosecutors to avoid arbitrary or abusive exercises of discretionary power." Ibid.
The Attorney General thereafter adopted guidelines. See Directive Implementing Guidelines Governing Plea-Bargaining and Discretionary Decisions in Drug Prosecutions Involving Mandatory Terms issued by Attorney General Robert J. Del Tufo to the Director of the Division of Criminal Justice and All County Prosecutors on September 15, 1992 ("Guidelines").
Under the guidelines, each county prosecutor must adopt and implement written policies governing plea and post-trial agreements and discretionary decisions using the Attorney General's guidelines as a "model." Guidelines at 5-6. School zone violators must be incarcerated. Guidelines at 5. The "minimum" period of incarceration is 364 days in the county jail as a condition of probation. Ibid. Other provisions in the guidelines afford specific and detailed guidance to the prosecutors. See Guidelines at 5-10.
The Attorney General further provides that "nothing contained in these guidelines shall preclude a prosecutor from adopting more *593 stringent policies or standardized plea offers consistent with the needs, resources and enforcement priorities of each county." Guidelines at 5. Our dissenting colleague finds this provision unconstitutional because it "formalizes the potential arbitrariness by permitting deviation from county to county." The dissent argues that this provision should be deleted from the guidelines, and we should hold that "a sentence recommendation premised on local guidelines which deviate from the Attorney General's otherwise uniform guidelines is arbitrary within the meaning of Lagares and Vasquez."
The underlying premise of the dissent appears to be that the Supreme Court in requesting guidelines to promote uniformity has required as a matter of constitutional mandate that prosecutorial plea bargaining policies in drug school zone cases be completely uniform throughout the state; otherwise the executive branch would be violating the separation of powers doctrine by encroaching on the authority of the judiciary in sentencing criminals. Hence, the dissent concludes that a "local" guideline which differs from the Attorney General's model to the disadvantage of the defendant is arbitrary and invalid per se.
We disagree. The Supreme Court of New Jersey has not so ruled. In Lagares the Supreme Court requested that the Attorney General adopt guidelines to "promote" uniformity. Lagares, supra, 127 N.J. at 32, 601 A.2d 698. If the Supreme Court had intended to mandate uniformity, then the Court would have so indicated. Promoting uniformity is not the same as mandating it.
Furthermore, the Supreme Court has not attempted to promulgate the content of such guidelines. On the contrary, the Court candidly admitted in Lagares that it was "not familiar with all of the factors that law enforcement agencies might consider significant in determining whether a defendant should be exempted from an extended sentence." Ibid. We can glean no intimation in the quaternity of Supreme Court decisions, Lagares, Vasquez, Peters, and Shaw, that in the formulation of plea policies in school zone *594 cases, the Supreme Court intended that prosecutors throughout the state must march in lock step.
The Attorney General's decision to allow some flexibility depending on local conditions is sensible and practical. Prosecutors are not fungible automatons. The prosecutor in one county may determine that the large number of drug sales near schools in that county requires stringent plea policies to deter such crimes and carry out the legislative intent that school zones should be free of drug sales.
The prosecutor in a second county may decide that drug sales in school zones are not a major problem in that county. The courts in that county may be burdened with the court congestion that plagues some of our vicinages. See Shaw, supra, 131 N.J. at 13, 618 A.2d 294. The prosecutor in that county may determine to concentrate the limited resources of the criminal justice system on the prosecution of armed robbers, burglars or juvenile offenders. The prosecutor there may decide that a more lenient plea bargaining policy in drug cases is warranted so that law enforcement resources in a time of tight budgets can be concentrated on these other serious crimes.
Nor are counties in New Jersey all homogenous. A prosecutor in a densely populated urban county may have to cope with rapidly escalating crime. In several such urban counties in our state, the bulk of drug sales are within 1,000 feet of a school. In other lightly populated rural counties, few drug sales may be within 1,000 feet of a school. Obviously, the prosecutors in those widely disparate counties are faced with strikingly different conditions and problems.
Under the defendant's argument all prosecutors and counties are poured into the same rigid mold. One size apparently fits all. To the contrary, we find no legislative nor constitutional intent to deny law enforcement the ability to adapt its crime fighting policies to the varying conditions in our state. The judicial oversight mandated by the Supreme Court does not mean that law enforcement must be encased in a judicial straitjacket.
*595 If, as the dissent suggests, we "delete" the portion of the Attorney General's guidelines which permits some local flexibility in the exercise of prosecutorial discretion, then we have transformed the guidelines into an imperative binding on all county prosecutors. Consequently, in cases like the present one, the legislatively imposed three year mandatory minimum prison term in school zone cases would by a stroke of the judicial pen be reduced in every county in the state to 364 days in the county jail as a condition of probation. The Legislature has not given the judiciary such transforming and reducing authority, and we discern no constitutional basis for the judiciary to assume it.
Aside from the issue of judicial authority, the judiciary is ill equipped to formulate plea bargaining policies or impose them upon law enforcement. Striving for uniformity and a reduction in disparity are desirable goals. However, these goals should not be used as an excuse for judicial exercise of law enforcement functions. The judiciary has no business in determining what plea policies in school zone cases are necessary and consistent with the needs, resources and law enforcement priorities in a given geographical area. Judicial restraint is especially important in view of the strong legislative and executive policy "to keep school zones drug-free" and thereby protect a new generation from the scourge of drugs. Dillihay, supra, 127 N.J. at 53, 601 A.2d 1149. Our judicial oversight should be limited as the Supreme Court has ruled, to instances in which prosecutors have clearly and convincingly acted in an arbitrary or capricious manner.

II
The dissent near the end of its opinion leaves the door slightly ajar. The dissent suggests that the Attorney General could permit some local flexibility if she amended the guidelines "to include factors unique to the county such as backlog, volume and limited prosecutorial resources, as a basis for deviation. For purposes of the Lagares/Vasquez review, however, the Attorney General's uniform guidelines would constitute the base with specific *596 reasons necessary to justify a deviation, as opposed to local deviation constituting the norm under individual county guidelines."
We question whether the judiciary should "suggest" to the Attorney General how she should draft plea bargaining guidelines in order to make them possibly constitutional. This issue was not briefed or argued, and therefore we should not address it.
In our view, the Attorney General has complied with the Supreme Court's request for guidelines. The Attorney General has required the prosecutors to prepare and implement written plea policies. The Attorney General in the guidelines has set forth principles, standards, policies and guidance for those plea policies. The prosecutors are to use the guidelines as a "model." Guidelines at 4.
The Attorney General has also permitted a prosecutor some flexibility under certain conditions. If a prosecutor's exercise of that flexibility cannot be justified, then judicial review is available to curb prosecutorial abuse. This individual case by case approach negates the potential for judicial encroachment on executive authority resulting from the judiciary mandating a uniform state-wide plea bargaining policy in school zone drug cases.

III
The constitutional guarantees of equal protection of the laws do not mandate uniformity here. See U.S. Const. amend. XIV; N.J. Const. art. I, para. 1. Equal protection relates to equality between persons rather than between geographic areas. Salsburg v. Maryland, 346 U.S. 545, 551-552, 74 S.Ct. 280, 283, 98 L.Ed. 281, 288 (1954). "Territorial uniformity is not a constitutional requisite." Salsburg, supra, 346 U.S. at 552, 74 S.Ct. at 284, 98 L.Ed. at 288.
Furthermore, the constitutional requirement of equal protection does not require that all persons be treated identically, but "only that differences in treatment be justified by an appropriate *597 state interest." State v. Fernandez, 209 N.J. Super. 37, 48, 506 A.2d 1245 (App.Div. 1986). See also Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1978); State v. Krol, 68 N.J. 236, 253, 344 A.2d 289 (1975). Thus, distinctions in treatment will be upheld "if there is a rational basis for them." State v. Senno, 79 N.J. 216, 229, 398 A.2d 873 (1979) (excluding criminal defendants from P.T.I. Programs in some counties and not in others is not a denial of equal protection). See also Brown v. City of Newark, 113 N.J. 565, 573, 552 A.2d 125 (1989).
As Justice Pashman stated in State v. Sutton, 80 N.J. 110, 121-122, 402 A.2d 230 (1970):
It is well settled that a prosecutor's conscious exercise of some selectivity in the enforcement of criminal laws does not in itself constitute a federal constitutional violation. Rather, in order for a defendant to prevail on an equal protection challenge, he must demonstrate that the decision to prosecute him and not others was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S.Ct. 663 [668], 54 L.Ed.2d 604, 611 (1978); see e.g., Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501 [505], 7 L.Ed.2d 446, 453 (1962); Yick Wo. v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).
Here a rational basis clearly exists for "some selectivity in the enforcement of criminal laws." The nature and extent of illegal drug sales and use, the number and type of drug arrests, and the backlogs of criminal cases in the courts all vary from county to county. Similarly the "needs, resources and enforcement priorities of each county," Guideline II, No. 4, are far from identical.
The Attorney General has reasonably determined that county prosecutors in dealing with these varying conditions should have some flexibility in exercising their authority to agree to a reduced sentence in drug school zone cases. No constitutional violation can lie in that logical and sound determination.

IV
At bottom, the criminal justice system rests on the principle of fair treatment for everyone. The simple facts in this case belie *598 any claim of unfair treatment. Defendant sold cocaine in Mercer County within 1,000 feet of an elementary school. The Legislature has provided a mandatory minimum punishment of three years without parole for such an offense unless the prosecutor agrees to less. The Mercer County Prosecutor agreed to less, namely one year in prison. The prosecutor set forth his reasons on the record. Defendant has not shown that the Mercer County Prosecutor's policy is arbitrary or capricious. A reduction from a three year prison term to one year is not abusive or harsh.
Basically, defendant's only complaint is that another prosecutor in another county might have treated him more leniently if he had committed the crime there. As former Chief Justice Weintraub said in response to a defendant's similar argument, "[i]f a defendant receives the punishment his offense warrants, he has received his due." State v. De Stasio, 49 N.J. 247, 260, 229 A.2d 636 cert. den., 389 U.S. 830, 88 S.Ct. 96, 19 L.Ed.2d 89 (1967). The defendant here has received much less punishment than his offense warrants under the school zone statute, N.J.S.A. 2C:35-7. He has received his due and has no cause to complain.
A strong argument can be made that this sentence should simply be affirmed. The defendant has had his days in court. He admitted that he committed the crime. He voluntarily entered into a plea agreement. He was sentenced in accordance with the plea agreement and the Criminal Code of Justice. The assistant prosecutor placed on the record his reasons for the plea agreement. The court after hearing argument found that the prosecutor's office did not act arbitrarily or capriciously.
However, the assistant prosecutor did not state on the record why the Mercer County Prosecutor has determined not to follow the minimum 364 day term of imprisonment in the Attorney General's guidelines. This should be done in order to permit judicial review of whether that determination is arbitrary or capricious. This matter should therefore be remanded to permit the prosecutor to set forth those reasons on the record with the defendant having an opportunity to attempt to establish clearly *599 and convincingly that the prosecutor's reasons are arbitrary and capricious. See Shaw, supra, 131 N.J. at 18, 618 A.2d 294.
We, therefore, remand for such a hearing. We do not retain jurisdiction.
STERN, J.A.D. (dissenting).
Defendant pled guilty to an accusation charging distribution of a controlled dangerous substance within 1,000 feet of school property, N.J.S.A. 2C:35-7, in exchange for the State's decision not to prosecute pending complaints and to recommend "four years incarceration with a one-year period of parole ineligibility." The one-year parole ineligibility term was in accordance with the "Mercer County Plea Agreement Policy," although the "Directive Implementing Guidelines Governing Plea-Bargaining and Discretionary Decisions in Drug Prosecutions Involving Mandatory Terms," promulgated by the Attorney General, authorized "364 days incarceration in a county jail as a condition of probation" for the same offense.
At the time of plea, the Assistant Prosecutor stated:
I'd just like to put on the record that the plea offer is within the guidelines set by the Attorney General's Office, based upon the fact that Mr. Press has no previous record. And the State therefore feels that that amount of time as a period of parole ineligibility is  satisfies the requirements of justice.
The prosecutor also advised the judge that the recommendation was in accord with the guidelines promulgated by the Mercer County Prosecutor. Defendant was a first offender who admitted selling $10 of crack cocaine to an undercover agent within 1,000 feet of a school. At the plea proceeding, defendant reserved the right to challenge the determination not to "reduce the three-year stip" further, so that a probationary sentence could be imposed. Counsel stated his belief that the prosecutor's position was "arbitrary and capricious," but believed "it's in the best interest of my client to accept whatever waiver of the mandatory stip the prosecution is willing to give," with the understanding that he could, at sentencing, "try and get it less."
*600 At sentencing, defendant challenged the prosecutor's failure to reduce the recommended ineligibility term further. He asserted that, under State v. Gonzalez, 254 N.J. Super. 300, 603 A.2d 516 (App.Div. 1992), "the State must prove why their policy is not arbitrary and capricious," and contended that the State failed to do so in this case. Defendant also complained that the Mercer County guidelines were too rigid, whereas there was more flexibility under the Attorney General's guidelines which "give a fair plea based on the facts and circumstances of an individual and of the case before the Court." The prosecutor responded by stating:
If it's agreed that the policy itself is not arbitrary or capricious, Your Honor, then there is no arbitrary treatment of Mr. Press. The Attorney General's guidelines make it clear, Judge, that the intent of the legislature in passing the Comprehensive Drug Reform Act of 1986 was to provide strict punishment of deterren[ce], and terms of incarceration were called for in certain instances. And one of those instances was the possession with the intent to distribute or distribution of controlled dangerous substance within 1,000 feet of school property.
Well, that's what's happened here. And the policy  the plea policy of the Prosecutor's Office has been broken down to fit the varying profiles and/or circumstances attendant on every case.
Here we have a person who distributed a controlled dangerous substance within 1,000 feet of school property. It was not right on school property, he does not have a criminal record, there was no significant amount of drugs involved, no significant amount of money. Quite frankly, he falls within the category of a person who should be incarcerated for one year as a parole disqualifie[r].
There are no facts and circumstances which would call for that amount of time to be lessened, or for that matter increased. So if the policy is not arbitrary, then the treatment of Mr. Press is not arbitrary because he fits that profile.
The sentencing judge perceived no legal impediment caused by the Mercer County Prosecutor's deviation from the Attorney General's guidelines, and rejected defendant's arguments that the recommendation was arbitrary. The judge concluded that "the prosecutor's policy has not been shown here to be arbitrary and capricious," and sentenced defendant in accordance with the prosecutor's recommendation.
Defendant was sentenced to the custody of the Commissioner of the Department of Corrections for three years with a minimum parole ineligibility period of one year. A $50 V.C.C.B. penalty, $50 lab fee and $1,000 D.E.D.R. penalty were also imposed, and *601 defendant's driver's license was suspended for six months. In the first point of his appeal to us, defendant argues:
THE GUIDELINES PROMULGATED BY THE ATTORNEY GENERAL PURSUANT TO STATE v. VASQUEZ, ARE INVALID BECAUSE THEY ARE NOT UNIFORM  THEY PERMIT EACH COUNTY TO COME UP WITH ITS OWN SENTENCE FOR A SCHOOL ZONE DRUG OFFENSE.
I agree with defendant's contention, and would remand for resentencing.
There is no dispute that a sentence recommendation under N.J.S.A. 2C:35-12 for this type of "school zone" offense involving a first offender (who pled guilty to distribution of cocaine within 1,000 feet of school property, but not "on" it), N.J.S.A. 2C:35-7, in Mercer County involves "one year of parole ineligibility," while the Attorney General's guidelines authorize sentences "of 364 days incarceration in a county jail as a condition of probation" for the same offense. Nor was there dispute at oral argument before us that several of the counties do not deviate from the Attorney General's guidelines while others do.
The Attorney General's guidelines provide:
In formulating these standardized plea offers, the prosecuting agency may generally consider the nature and extent of the drug distribution and use problem and the number and type of drug arrests in the jurisdiction, and the backlog of drug and non-drug criminal cases in the courts. Specific consideration should be given to the seriousness of the offense, the role of the actor in the crime, the amount of time which has passed since the offense was committed and the amount of resources already expended on the particular case. Thus, these standardized plea offers should consider whether the defendant has agreed to plead guilty 1) before indictment, 2) after indictment but before the filing, response to or consideration of pretrial motions, and 3) before trial but following pretrial hearings. These standardized plea offers should also consider whether the defendant has previously been convicted of an offense, provided however that the offer is consistent with the Attorney General's "Guidelines for Determining Whether to Apply for an Extended Term Pursuant to N.J.S.A. 2C:43-6f." Nothing contained in these guidelines shall preclude a prosecutor from adopting more stringent policies or standardized plea offers consistent with the needs, resources and enforcement priorities of each county.
[Directive Implementing Guidelines Governing Plea-Bargaining and Discretionary Decisions in Drug Prosecutions Involving Mandatory Terms issued by Attorney General Robert J. Del Tufo to the Director of the Division of Criminal Justice and All County Prosecutors on September 15, 1992 ("Guidelines") at 6.]
*602 Under the wording of N.J.S.A. 2C:35-12, the prosecutor's recommendation in a "school zone" case, N.J.S.A. 2C:35-7, is binding, and given State v. Vasquez, 129 N.J. 189, 196, 609 A.2d 29 (1992), a recommendation premised on uniform guidelines is generally unassailable because, from a separation of powers perspective, the guidelines eliminate the ability of the prosecutor to act arbitrarily and capriciously. Stated differently, no separation of powers problem exists because the judge who imposes the sentence does so premised on approval of a plea embodying a uniform recommendation, and the judge has no basis to reject the plea for arbitrariness.[1]See State v. Bridges, 131 N.J. 402, 621 A.2d 1 (1993); State v. Shaw, 131 N.J. 1, 10, 618 A.2d 294 (1993) ("prosecutor's statutory authority to grant or refuse waiver of a mandatory term as part of a plea agreement does not offend principles of separation of powers when the authority is exercised in accordance with appropriately-adopted standards"); Vasquez, supra, 129 N.J. at 196, 609 A.2d 29 (the "standards prevent the legislative goal of uniformity in sentencing from being undermined by unreviewable prosecutorial discretion"); Lagares, supra, 127 N.J. at 32, 601 A.2d 698 ("guidelines will promote uniformity and *603 provide a means for prosecutors to avoid arbitrary or abusive exercises of discretionary power" and "will provide for effective judicial review"); Gonzalez, supra, 254 N.J. Super. at 300, 603 A.2d 516 (permitting challenge to recommendation under N.J.S.A. 2C:35-12 in "school zone" case on basis of arbitrariness).
The guidelines contemplated preserve "the separation of powers" by recognizing "the legislative intent to vest the executive with some influence in the sentencing" of the multiple drug offenders referred to in Lagares, like the "school zone" offenders involved in Vasquez, Peters and Gonzalez, but simultaneously recognize the "judicial authority to prevent arbitrary decision making." Lagares, supra, 127 N.J. at 33, 601 A.2d 698. The Court upheld the constitutionality of the contested provisions of the drug act, in the words of Lagares, by requesting that the Attorney General, "in consultation with the various county prosecutors," adopt uniform guidelines "for use throughout the state." Id. at 32, 601 A.2d 698. It did not authorize the county prosecutors to adopt guidelines for use in their respective jurisdictions; nor did it suggest that the Attorney General could make the need for uniformity subject to the views of each prosecutor within his or her office.
The premise on which the constitutionality of the sentencing scheme is based falls when the scheme itself promotes or formalizes the potential arbitrariness by permitting deviation from county to county. The guidelines as adopted formalize potential disparity throughout the State, notwithstanding the fact that we are dealing with sentencing under a State statute which applies equally in every county.
Thus, while the guidelines may avoid the arbitrariness which flows in their absence with respect to prosecutorial decision making within each county, the application of different guidelines in different counties poses a different type of disparity. A defendant in Mercer County must serve one real year before parole, while a similar defendant prosecuted by the Attorney General in that county or any other county, or by a prosecutor who follows the *604 Attorney General's guidelines, may serve only eighty-six days or so for the same crime. See State v. Heisler, 192 N.J. Super. 586, 590-91, 471 A.2d 805 (App.Div. 1984). See also N.J.S.A. 30:4-123.51; State v. Stewart, 136 N.J. 174, 183-84, 642 A.2d 942 (1994) (prohibiting immediate release before parole under county intensive probation supervision program where defendant was sentenced to probation with 364 days in jail as part of negotiated plea in school zone case).
Of course, the county resources for law enforcement and the criminal justice system differ, and traditionally we have recognized the need for policies and practices which recognize local concerns and differences.[2]See e.g., State v. Senno, 79 N.J. 216, 229-31, 398 A.2d 873 (1979); State v. Rush, 46 N.J. 399, 414, 217 A.2d 441 (1966). I also recognize the broad discretion the prosecutor has in the criminal justice system, including the charging process, which may impact on the offense for which defendant is convicted and the sentence imposed therefor. See, e.g., State v. Leonardis, 73 N.J. 360, 375 A.2d 607 (1977); State v. Winne, 12 N.J. 152, 171, 96 A.2d 63 (1953); Supreme Court Memorandum on Graves Act Plea Bargaining (April 27, 1981) (relating to post-indictment cases). Moreover, a prosecutor's recommendation frequently provides the maximum authorized sentence in a case, see State v. Warren, 115 N.J. 433, 558 A.2d 1312 (1989); State v. Spinks, 66 N.J. 568, 334 A.2d 23 (1975), and the "plea bargaining" policy of the county prosecutors may vary, resulting in some lack of uniformity from county to county. See R. 3:9-3(b), (c). See also State v. Sainz, 107 N.J. 283, 526 A.2d 1015 (1987). But under the Constitution, sentencing discretion itself has traditionally been exercised by the Judiciary, subject to the limits appropriately established by legislation, see, e.g., State v. Des Marets, 92 N.J. 62, *605 80-81, 455 A.2d 1074 (1983), while this case involves formal guidelines for use statewide in light of N.J.S.A. 2C:35-12.[3] Moreover, the Mercer County guidelines do not even purport to state reasons why they deviate as a matter of policy or practicality from those of the Attorney General with respect to the offense involved, and the prosecutor at sentencing offered no such explanation.
Without a proper record, I would not address the equal protection issue directed to the impact of different guidelines in different counties. However, the record which was developed contains no explanation or justification for any deviation in Mercer County from the Attorney General's guidelines, nor does it offer any factual explanation or justification for building local discretion into the Attorney General's guidelines. While in this case there was a "statement on the record by the prosecutor of the reasons for the prosecutorial decision" for adherence to the Mercer County guidelines, see Shaw, supra, 131 N.J. at 18, 618 A.2d 294, the record reflects no such statement or endeavor to justify the need for local guidelines or deviation from the general guidelines promulgated by the Attorney General. At least in the absence of such a record, I do not believe that such local guidelines were intended by our Supreme Court to satisfy the separation of powers imperative.
Moreover, I know of no authority by which a defendant charged with a given crime can, in essence, be exposed to a different minimum or maximum sentence merely because of the county in which he or she was charged. That concept is inconsistent with the fundamental endeavor of both the Code of Criminal Justice as a whole, and the Comprehensive Drug Reform Act, of which N.J.S.A. 2C:35-7 and N.J.S.A. 2C:35-12 are integral parts, to "promote uniformity and to reduce disparity in sentencing." See Bridges, supra, 131 N.J. at 410, 621 A.2d 1 (referring to one of the "expressed policies of the Drug Reform Act ... to promote *606 uniform and consistent sentences"). See also N.J.S.A. 2C:35-1.1d; N.J.S.A. 2C:1-2b(4), (5), (6); State v. Lee, 235 N.J. Super. 410, 413, 563 A.2d 51 (App.Div. 1989). Under Lagares and Vasquez a judge must review the prosecutor's recommended sentence in a "school zone" case for arbitrariness; the recommendation is binding unless found to be arbitrary. The majority upholds a system which, in essence, requires judges to impose different sentences on similar offenders for the same crime merely because of the county in which the defendant is prosecuted. I do not read Lagares and Vasquez as permitting that approach. Accordingly, I would uphold the Attorney General's guidelines by deleting therefrom the provision authorizing the county prosecutors to adopt "more stringent policies or standardized plea offers." Stated differently, I believe that a sentence recommendation premised on local guidelines which deviate from the Attorney General's otherwise uniform guidelines is arbitrary within the meaning of Lagares and Vasquez.
While I do not now purport to interpret the Attorney General's guidelines with finality, I note a provision permitting "upward departures" for plea offers "which provides for a greater term of imprisonment or parole ineligibility than that authorized pursuant to any policy or applicable standardized plea offer." See Guidelines at 7. That provision does not appear to apply here, but I do not suggest that the Attorney General's guidelines cannot be amended to include factors unique to the county such as backlog, volume and limited prosecutorial resources, as a basis for deviation. For purposes of the Lagares/Vasquez review, however, the Attorney General's uniform guidelines would constitute the base with specific reasons necessary to justify a deviation, as opposed to local deviation constituting the norm under individual county guidelines.
I would reverse the sentence imposed, and remand for resentencing consistent with the Attorney General's guidelines, without *607 reference to any supplemental deviations promulgated by the Mercer County Prosecutor.[4]
NOTES
[1] Vasquez and State v. Peters, 129 N.J. 210, 609 A.2d 40 (1992), involved cases where the sentence issue arose only in the context of a violation of probation following the prosecutor's "waiver" of the mandatory sentence at initial sentencing only. State v. Shaw, 131 N.J. 1, 618 A.2d 294 (1993), concluded that an issue related to initial sentencing was truly one which had to be reviewed at the time of plea where the recommendation involved a different disposition depending upon defendant's appearance or non-appearance at sentencing. "The only reasonable way to impart definitiveness to the process is for the courts to review, at the time of initial plea, the prosecutor's exercise of discretion under the Lagares/Vasquez guidelines." Id. 131 N.J. at 16, 618 A.2d 294. Thus, the propriety of the sentence recommendation must be explored at the time of plea, although the reality is that its rejection might only result in a trial and mandatory sentence. See also State v. Sepulveda, 253 N.J. Super. 447, 445-48, 602 A.2d 273 (App.Div. 1992) (concurring and dissenting opinion) (suggesting the same thought in a V.O.P. case), modified 130 N.J. 589, 617 A.2d 1215 (1992). We have not yet explored whether Vasquez and Gonzalez, supra, require review of prosecutorial decisions not to negotiate at all following guilty verdicts at trials, but the guidelines provide standards on this subject which we have upheld. State v. Jiminez, 266 N.J. Super. 560, 630 A.2d 348 (App.Div. 1993).
[2] We need not explore the fact that we are part of a statewide criminal justice system implementing the State Code of Criminal Justice, and that we are now part of a unified State funded judiciary, even though the prosecutors and sheriff are paid by the county. But see In re Application of Bigley, 55 N.J. 53, 259 A.2d 213 (1969), permitting the Assignment Judge to entertain a prosecutor's application for additional funding to meet the demands of his or her office.
[3] The Judiciary has utilized guidelines, from time to time, to promote uniformity in sentencing, and to reduce undue disparity. See State v. Whitehead, 159 N.J. Super. 433, 436, 388 A.2d 280 (Law Div. 1978), aff'd o.g., 80 N.J. 343, 349, 403 A.2d 884 (1979).
[4] Although I have considered a remand to permit the prosecutor to vacate the plea given his expectation of the authorized maximum sentence, I have chosen not to do so. In other contexts, only a defendant has been able to withdraw his plea when reasonable expectations regarding the sentence have not been fulfilled. See State v. Warren, supra, 115 N.J. at 443, 558 A.2d 1312 (only defendant is entitled to withdraw from a guilty plea if his or her sentencing expectations have been defeated by the imposition of a harsher sentence than that contemplated by the plea agreement). See also Shaw, supra, 131 N.J. at 10-13, 618 A.2d 294; State v. Kovack, 91 N.J. 476, 483, 453 A.2d 521 (1982); State v. Spinks, supra.