738 A.2d 370

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. LUIS REYES, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 27, 1999—Decided October 15, 1999.

Before Judges HAVEY, KEEFE, and A.A. RODRIGUEZ.

*Ivelisse Torres*, Public Defender, attorney for defendant-appellant (*Alison Perrone*, Assistant Deputy Public Defender, of counsel and on the letter brief).

*John J. Farmer, Jr.*, Attorney General, attorney for plaintiff-respondent (*Gerard C. Sims, Jr.*, Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

The issue to be decided on this appeal is whether the application of the February 26, 1998, Attorney General Interim Guidelines (February 1998 Guidelines), governing plea offers in Comprehensive Drug Reform Act (CDRA) cases, to defendant's sentence violated the *ex post facto* clauses of the Federal and State Constitutions. *See U.S. Const.* art. I, § 10, cl. 1; *N.J. Const.* art. IV, § 7, ¶ 3. We hold that it did not and affirm the sentence imposed.

Defendant was indicted on six counts for drug related offenses he allegedly committed on January 15, 1998. In April 1998, the State extended a plea offer to the defendant. In exchange for defendant's guilty plea to count three, charging defendant with third degree possession of marijuana with the intent to distribute it within 1,000 feet of school property (*N.J.S.A.* 2C:35–7), and count five, charging defendant with third degree distribution of marijuana within 1,000 feet of school property (*N.J.S.A.* 2C:35–7), the State agreed to recommend a sentence of three years with an eighteen month parole disqualifier and dismiss the remaining

counts of the indictment. Defendant accepted the plea offer and pled guilty to counts three and five on May 26, 1998.

Prior to sentencing, defendant moved to have the sentence imposed in accord with the September 15, 1992 Guidelines, which defendant claimed were in effect when he committed the offenses on January 15, 1998. The statewide presumptive plea offer for the subject offenses under the September 1992 Guidelines was 364 days in the county jail as a condition of probation. Defendant argued that a sentence imposed in accord with the February 1998 Guidelines would violate the *ex post facto* provisions of the Federal and State Constitutions because the application of those guidelines made the punishment for the crime more burdensome than the September 1992 Guidelines. *See Beazell v. Ohio,* 269 *U.S.* 167, 169–70, 46 *S.Ct.* 68, 68–69, 70 *L.Ed.* 216, 217 (1925) (holding that one way in which the *ex post facto* provision of the Constitution can be violated is by applying a law that makes more burdensome the punishment of a crime after its commission). The motion was denied and defendant was sentenced in accord with the plea agreement. This appeal followed.

The September 1992 Guidelines came about as a result of the Supreme Court's decision in *State v. Vasquez,* 129 *N.J.* 189, 609 *A.*2d 29 (1992). In *Vasquez,* the Court held that § 35–12 of CDRA, which gave the prosecutor the power to waive the imposition of the otherwise mandatory minimum prison term of three years imposed by § 35–7 of CDRA, was constitutional so long as the prosecutor's decisions regarding waiver were made in accordance with prosecutorial guidelines, the reasons for granting or denying waiver were placed on the record, and that prosecutorial decisions were subject to review for arbitrary and capricious application. *Id.* at 195–96, 609 *A.*2d 29.

On January 15, 1998, the same day defendant committed the subject offenses, new guidelines were promulgated (January 1998 Guidelines). If the statewide January 1998 Guidelines were applied to the defendant here, the presumptive plea offer would be a

State prison term with a one year parole disqualifier.[1]  On February 19, 1998, the Supreme Court held that, to the extent the Attorney General permitted counties to develop their own plea policies for CDRA cases, the guidelines violated the separation of powers clause of the State Constitution and were contrary to the Criminal Code's goal of uniformity in sentencing.  *State v. Brimage*, 153 *N.J.* 1, 24–27, 706 *A.*2d 1096 (1998).  The Court ordered the Attorney General to promulgate new statewide guidelines within ninety days.  *Id.* at 24–25, 706 *A.*2d 1096.  Further, recognizing that "[t]he State, the counties, and numerous defendants have relied on the previous versions of the Attorney General's Guidelines," the Court held that except for cases pending direct appeal, its ruling would be strictly prospective.  *Id.* at 26, 706 *A.*2d 1096.

The February 1998 Guidelines were in response to *Brimage.* Those guidelines increased the statewide minimum sentence to be served by a person, such as defendant, from one year to eighteen months.  The Attorney General directed that the February 1998 Guidelines were to apply "to all pending cases without regard to the date when the offense occurred."  Accordingly, the prosecutor applied those guidelines to the plea offer extended to defendant.[2]

---

[1] The Attorney General directed that the January 1998 Guidelines were to take effect immediately, except the part of the Guidelines requiring a person convicted of a § 35-7 offense to serve a minimum state prison sentence of one year, which provision would not "apply to any offense committed before the effective date of this Directive."  Because defendant committed the offenses in question on the effective date of the January 1998 Guidelines, not "before" the effective date, it appears to us that those Guidelines, rather than the September 1992 Guidelines, would apply to defendant's case.  That finding, however, does not materially affect defendant's argument that the February 1998 Guidelines, which required a minimum prison term of eighteen months, enhanced his prison term and was, therefore, violative of the *ex post facto* clauses of both constitutions.

[2] Defendant contends, without discussion or citation, that the Attorney General's directive violated the *Brimage* Court's statement that its ruling would be applied prospectively, except as to cases on direct appeal.  The contention is meritless.  It is obvious from the context of the Court's decision that the prospective aspect of the Court's holding was directed to sentences imposed

On May 20, 1998, the Attorney General promulgated new guidelines that superceded all previous guidelines (May 1998 Guidelines). Under these guidelines, decisions regarding waiver of the mandatory minimum sentence are governed by the "Tables of Authorized Plea Offers." Defendant was sentenced on August 7, 1998. The prosecutor offered to have defendant sentenced in accord with the May 1998 Guidelines, but defendant declined the offer. Defendant's appellate counsel, however, now requests resentencing under those guidelines in the event we hold that the increased minimum prison term stemming from the application of any guideline promulgated on or after January 15, 1998 is not found to be a violation of the *ex post facto* clauses of the State and Federal Constitutions.[3]

Defendant's *ex post facto* argument relies primarily on the Supreme Court's holding in *Miller v. Florida*, 482 *U.S.* 423, 107 *S.Ct.* 2446, 96 *L.Ed.*2d 351 (1987) and the more recent case of *United States v. Menon*, 24 *F.*3d 550 (3d Cir.1994). The cases are inapposite to the case at hand because they address quite different circumstances. In both cases, statutory sentencing guidelines promulgated after the defendants committed the crimes alleged in the indictments, were applied to the sentences imposed by the trial courts, and, in each case, the defendants received a greater prison term than would have been received if the courts applied the guidelines applicable as of the date the alleged offenses were committed. In both cases, the courts found a violation of the *ex post facto* clause of the Federal Constitution.[4]

under county guidelines before *Brimage* was decided, and for which no appeal was taken. *See also, State v. Castaing*, 321 *N.J.Super.* 292, 728 *A.*2d 865 (App.Div.1999) (applying *Brimage* guidelines to post conviction waiver agreements).

[3] Our review of the May 1998 Guidelines reflects no difference in the presumptive sentence applicable to defendant under the later guidelines. Thus, defendant would not benefit from its application.

[4] *Miller, supra,* 482 *U.S.* at 424, 107 S.Ct. 2446, addressed Florida's statutory law, while *Menon, supra,* 24 *F.*3d at 565, addressed federal statutory guidelines.

The *ex post facto* clauses of the Federal Constitution are generally considered to be directed at legislative action rather than action by the executive branch of government. *Marks v. United States,* 430 *U.S.* 188, 191, 97 *S.Ct.* 990, 992, 51 *L.Ed.*2d 260 (1977); *Prater v. U.S. Parole Comm'n,* 802 *F.*2d 948, 951–52 (7th Cir.1986). Here, the guidelines under attack were promulgated by the Attorney General, a member of the executive branch of government, at the direction of the Supreme Court as a function of the Court's constitutional right to supervise decisions affecting sentencing. While the Legislature gave the Attorney General the power to waive the otherwise mandatory minimum sentence of three years in prison as a part of a negotiated plea agreement, it did not authorize the Attorney General to increase the penal consequences of the defendant's act. Indeed, the Attorney General did not increase the penalty prescribed by statute. There is no guideline, either before or after January 15, 1998, that increases the statutory presumptive minimum sentence of three years for the offenses to which defendant pled guilty. Thus, the Legislature did not delegate to the executive branch of government a power to do that which the Legislature itself was powerless to do, *i.e.,* increase the penalty for a crime after the crime was committed. *Prater, supra,* 802 *F.*2d at 954. Rather, the Legislature simply gave the Attorney General the power to reduce the presumptive penalty under circumstances that would best foster the legislative goals of CDRA. *State v. Jimenez,* 266 *N.J.Super.* 560, 567, 630 *A.*2d 348 (App.Div.1993). Therefore, when the Attorney General promulgated guidelines as a part of this delegated power, the guidelines represented the executive branch's interpretation of the legislative purpose undergirding CDRA. This interpretive function has not been recognized as the promulgation of a "law" within the meaning of the *ex post facto* clauses of the Federal Constitution. *Prater, supra,* 802 *F.*2d at 954. Apropos to this case, the *Prater* court observed:

If judges get tougher on crime by meting out stiffer sentences or resolving more close procedural questions against criminal defendants, or prosecutors drive harder plea bargains, or the Parole Commission takes a more jaundiced view of applications for parole, the ex post facto prohibition is not violated, even though a

criminal's punishment may end up being longer or harsher than he hoped when he committed the crime.

[*Id.* at 952.]

. . . .

[I]f the Justice Department issues guidelines for the enforcement of a federal statute that it administers (as it did in the 1984 Department of Justice Merger Guidelines, for example), this is the performance of an interpretive function that every law enforcement agency has; it is not the enactment of a law. . . . If the law is unchanged and no legislative regulations are promulgated, a mere change in enforcement methods, priorities, or policies, written or unwritten-a change within the scope of the executive branch's discretion in enforcing the laws passed by Congress-does not activate the prohibition against ex post facto laws.

[*Id.* at 954 (citations omitted).]

*See also, Shabazz v. Gabry,* 123 *F.*3d 909, 916 (6th Cir.1997), (holding that "[c]hanges in the administration and enforcement of statutes have little impact on . . . public expectations"), *cert. denied,* 522 *U.S.* 1120, 118 *S.Ct.* 1061, 140 *L.Ed.*2d 122 (1998). Thus, it is clear that the application of the February 1998 Guidelines to this defendant did not violate the *ex post facto* clause of the Federal Constitution. Further, because our Supreme Court has interpreted the New Jersey Constitution's prohibition against *ex post facto* laws using the same principles as federal courts interpreting the Federal Constitution, we find no violation of the New Jersey Constitution. *See Doe v. Poritz,* 142 *N.J.* 1, 42–43, 662 *A.*2d 367 (1995) (holding that no reason has been advanced to date warranting an interpretation of New Jersey's *ex post facto* clause differently from the Federal Constitution).

Affirmed.