778 A.2d 422

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. SHAWN
FOWLKES A/K/A SHAWN WARD, ALI BURGER AND WAND-
SHAWN BURGER, DEFENDANT–APPELLANT.

Argued March 26, 2001—Decided June 26, 2001.

Diane Toscano, Assistant Deputy Public Defender, argued the cause for appellant (Peter A. Garcia, Acting Public Defender, attorney).

Gerard C. Sims, Jr., Deputy Attorney General, argued the cause for respondent (John J. Farmer, Jr., Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

LaVECCHIA, J.

This appeal involves a defendant's plea of guilty to a school-zone drug offense under the Comprehensive Drug Reform Act of 1987 (CDRA), N.J.S.A. 2C:35–1 to 36A–1. To satisfy constitutional requirements, in 1992 the Attorney General promulgated two plea-agreement directives to govern prosecutorial discretion in structuring plea offers under the CDRA. Directive Implementing Guidelines Governing Plea–Bargaining and Discretionary Decisions in Drug Prosecutions Involving Mandatory Terms, from Robert J. Del Tufo, Attorney General, to the Director, Division of Criminal Justice and All County Prosecutors (Sept. 15, 1992) (Mandatory Term Guidelines); Directive Implementing Guidelines for Determining Whether to Apply for an Extended Term Pursuant to N.J.S.A. 2C:43–6(f), from Robert J. Del Tufo, Attorney General, to Director, Division of Criminal Justice and All County Prosecutors (Apr. 20, 1992) (Extended Term Guidelines). Those plea-bargaining guidelines were in effect when defendant committed his drug offense in February 1997.

One year later, this Court decided *State v. Brimage*, in which we held that plea-bargaining guidelines for offenses then in place were not consistent throughout the State and must be made uniform. 153 *N.J.* 1, 23, 706 *A.2d* 1096 (1998). In response to *Brimage*, the Attorney General promulgated new guidelines effective May 20, 1998. *Attorney General Guidelines for Negotiating Cases Under N.J.S.A. 2C:35-12* (May 20, 1998) (Brimage Guidelines). Also, the Attorney General directed that the Brimage Guidelines "shall apply to all pending cases." *Attorney General Directive No.1998-1 Prosecuting Cases Under the Comprehensive Drug Reform Act* (May 20, 1998).[1]

Approximately two months after the promulgation of the new guidelines, the State extended a plea offer to defendant. Although the plea offer was consistent with the Brimage Guidelines, it included a longer period of parole ineligibility than that available to defendant under the Extended Term Guidelines in effect at the time of his offense. Prior to sentencing, defendant objected to the use of the Brimage Guidelines in calculating the State's plea offer, maintaining that plea negotiations should have proceeded in accordance with those plea-bargaining guidelines in effect at the time of his offense. The issue here is whether the Brimage Guidelines should have been applied to defendant's offense. In an unpublished opinion, the Appellate Division affirmed defendant's sentence.

## I.

On July 27, 1998, defendant pled guilty to third-degree possession of a controlled dangerous substance with intent to distribute

---

[1] The Brimage Guidelines superseded Interim Guidelines that were promulgated on February 26, 1998. *Prosecution of Drug Cases Following State v. Brimage*, from Peter Verniero, Attorney General, to All County Prosecutors (Feb. 26, 1998). The Interim Guidelines included the directive, later essentially carried forward in the Brimage Guidelines, that they "shall apply to all pending cases without regard to the date when the offense occurred."

while within 1,000 feet of school property, contrary to *N.J.S.A.* 2C:35–7. Defendant admitted that he was in possession of heroin on February 2, 1997, in the Seth Boyden Housing Projects in Newark with intent to distribute, and the defense stipulated that the Projects were within 1,000 feet of a school. In exchange for his plea, the State agreed to dismiss the remaining counts and recommend a sentence of seven years incarceration with forty-two months parole ineligibility, to run concurrently with a sentence he was then serving for an unrelated parole violation. The State's recommendation was in accordance with the presumptive pre-indictment plea offer for an enhanced extended-term sentence under *N.J.S.A.* 2C:43–6(f), consistent with the Brimage Guidelines. This was defendant's fifth indictable conviction and his second for a drug distribution offense.

Defendant appeared for sentencing in September 1998, at which time defense counsel stated that "while we stand by the plea agreement, . . . we just wanted to express our dissatisfaction with the process." The court imposed the agreed-on sentence of seven years with forty-two months parole ineligibility in addition to appropriate penalties and fees.

Defendant appealed. At oral argument before the Appellate Division, defendant claimed for the first time that application of the Brimage Guidelines to his case violated constitutional prohibitions on *ex post facto* laws. The Appellate Division disagreed, holding (1) that application of the Brimage Guidelines to defendant was not inconsistent with this Court's decision in *Brimage*, and (2) that application of the Brimage Guidelines to defendant's case did not violate the *ex post facto* clauses of the United States or New Jersey Constitutions. We granted defendant's petition for certification, 165 *N.J.* 606, 762 *A.*2d 220 (2000).

## II.

During the last ten years, a tripartite relationship has developed among the legislative directives of the CDRA, the constitutional imperatives announced in this Court's decisions, and the Attorney

General's plea-bargaining guidelines implementing those decisions. In *State v. Brimage, supra,* 153 *N.J.* at 7–22, 706 *A.*2d 1096, this Court reviewed the applicable CDRA statutes and the background leading to the promulgation of the Attorney General's Guidelines. An extensive restatement of that review is unnecessary here except to focus on a principle that underlies this Court's decisions in all our guidelines cases. As first identified in *State v. Lagares,* 127 *N.J.* 20, 28–31, 601 *A.*2d 698 (1992), the avoidance of arbitrariness in sentencing is of paramount importance in our jurisprudence in this area.

A mandate to avoid arbitrariness resonates in our cases concerning the guidelines. That principle fosters the goals of the Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 104–9 (Code). The Legislature lists among the purposes of the sentencing provisions of the Code the intent "[t]o safeguard offenders against excessive, disproportionate or arbitrary punishment," and "[t]o give fair warning of the nature of the sentences that may be imposed on conviction of an offense." *N.J.S.A.* 2C:1–2. In our earliest decision addressing in detail the standards that would guide sentencing under the Code, this Court noted that "[t]he central theme of the Code's sentencing reforms is the replacement of the unfettered sentencing discretion of prior law with a structured discretion designed to foster less arbitrary and more equal sentences." *State v. Roth,* 95 *N.J.* 334, 345, 471 *A.*2d 370 (1984).

Later, in *Lagares,* we first considered a constitutional challenge to the prosecutor's power to invoke the extended sentence requirement of *N.J.S.A.* 2C:43–6(f). 127 *N.J.* at 23, 601 *A.*2d 698. That statutory provision requires a court to impose an extended term with a period of parole ineligibility for a repeat drug offender, but only upon the application of the prosecutor. *Ibid.* The infirmity that *Lagares* identified in Section 6(f) was the prosecutor's unilateral discretion to select, without being subject to judicial review and without standards, which defendants will be subject to an extended term. *Id.* at 28, 601 *A.*2d 698. The Court considered that infirmity within a broader perspective:

> Where the Legislature has permitted the executive to select defendants for enhanced punishment or favorable treatment, this Court has generally required that decision-making be carried out in a fashion that *limits potential arbitrariness.* In addition, we have required that the judiciary retain the power to review prosecutorial decisions to avoid abuses of discretion. We continue that approach today.
>
> [*Ibid.* (emphasis added).]

Construing Section 6(f) in a manner that would uphold its constitutionality, the Court in *Lagares* required several mechanisms to protect against arbitrariness. First, the Court required the adoption of guidelines that "will promote uniformity and provide a means for prosecutors to avoid arbitrary or abusive exercises of discretionary power" and requested that the Attorney General, in consultation with the county prosecutors, develop those guidelines for use statewide. *Id.* at 32, 601 *A.*2d 698. Second, prosecutors were required to state on the record their reasons for seeking extended terms to permit effective review of prosecutorial sentencing decisions. *Ibid.* Finally, "to protect defendants from arbitrary application of enhanced sentences," we required that prosecutorial decisions be subject to judicial review for arbitrariness and capriciousness. *Id.* at 33, 601 *A.*2d 698. Collectively, those safeguards mitigated "the risk of the prosecutor's arbitrary application of the sentencing provision." *Ibid.* The holding in *Lagares*, therefore, ensured that "judicial authority to prevent arbitrary decision-making will remain intact." *Ibid.; see also State v. Vasquez,* 129 *N.J.* 189, 196, 609 *A.*2d 29 (1992) (upholding transfer of sentencing authority under Section 12 of CDRA, which allows prosecutor to waive mandatory minimum sentence, but stating that judicial oversight was "mandated to protect against arbitrary and capricious prosecutorial decisions"). The *Lagares* decision was based on earlier decisions of this Court that similarly focused on the elimination of arbitrary prosecutorial decisions affecting sentencing, including *State v. Leonardis,* 71 *N.J.* 85, 121, 363 *A.*2d 321 (1976) (*Leonardis I* ) (remedying "virtually untrammeled discretion" vested in prosecutors concerning pretrial intervention programs and refusing to "sanction a decisional process which might yield *ad hoc* or arbitrary determinations"), and *State*

*v. Leonardis,* 73 *N.J.* 360, 377 n. 7, 375 *A.*2d 607 (1977) (*Leonardis II* ) (explaining that "[i]t is universally recognized that, as an aspect of the courts' duty to ensure fundamental fairness, they will root out arbitrary government action").

It was against that backdrop of statutory and decisional law concerned with the prevention of arbitrariness in sentencing that the Court in *Brimage, supra,* re-examined the Attorney General's plea-bargaining guidelines. The guidelines at issue in *Brimage* permitted each county to adopt its own standard plea offers for cases under CDRA so long as statewide minimums were not transgressed. 153 *N.J.* at 4, 706 *A.*2d 1096. The *Lagares/Vasquez* line of cases, which was concerned with the absence of guidelines, resulted in the adoption of guidelines that reduced capriciousness with regard to decision-making among individual prosecutors *within* a county. Those guidelines, however, allowed intercounty differences. We concluded in *Brimage* that, although the guidelines adopted within each county avoided "arbitrariness with respect to decision-making among individual prosecutors," those guidelines impermissibly allowed disparities between counties. *Id.* at 22, 706 *A.*2d 1096. The guidelines, therefore, "fail[ed] to appropriately channel prosecutorial discretion, thus leading to arbitrary and unreviewable differences between different localities." *Id.* at 23, 706 *A.*2d 1096. The premise supporting the constitutionality of the sentencing scheme collapsed " 'when the scheme itself promote[d] or formalize[d] the potential arbitrariness by permitting deviation from county to county.' " *Ibid.* (quoting *State v. Press,* 278 *N.J.Super.* 589, 603, 651 *A.*2d 1068 (App.Div.) (Stern, J., dissenting), *certif. denied,* 140 *N.J.* 329, 658 *A.*2d 729 (1995), *appeal dismissed,* 144 *N.J.* 373, 676 *A.*2d 1089 (1996)).

We ordered the Attorney General to promulgate new, uniform plea-agreement guidelines for application statewide, holding further that our decision would have limited retroactive effect:

> [W]e hold that our ruling today is prospective, except with respect to this case and all cases on direct appeal. . . .

The State, the counties, and numerous defendants have relied on the previous versions of the Attorney General's Guidelines. Moreover, although it is impossible to forecast the exact number of defendants who might be affected if this ruling were applied retroactively, estimates are that more than a thousand defendants are sentenced annually under [*N.J.S.A.*] Section 12. Accordingly, such an application would require the review of numerous sentences, resulting in a great number of sentencing hearings, and would impose a very substantial burden on the court system and the administration of justice.

We have, however, chosen to apply a limited retroactive effect to this case and those cases pending final appeal on the date this opinion is issued. The cases pending final appeal will have the same options ... as defendant in this case.

[*Id.* at 25–26, 706 A.2d 1096.]

The defendant in *Brimage* was given the option of either "vacating his plea or renegotiating his plea. If he chooses the latter option, his plea shall be determined under the Attorney General's Guidelines as they stood at the time of his sentencing." *Id.* at 27, 706 A.2d 1096. The defendant argued that the Attorney General's guidelines that were in effect at the time of the defendant's sentencing included standard plea offers that were less stringent than that prescribed by the county. *Ibid.*

In response to *Brimage*, the Attorney General issued the Brimage Guidelines that superseded all previous guidelines. Under the Brimage Guidelines a "Table of Authorized Plea Offers" governs prosecutors' decisions concerning waiver and/or length of the mandatory minimum sentence under the CDRA. The Table sets forth presumptive plea offers based on a defendant's offense, his prior criminal history, and the timing of the plea offer. The central issue in this appeal is the legality of the Attorney General's implementing directive that the Brimage Guidelines apply to *all* pending cases, even when that results in a plea offer that visits a harsher period of parole ineligibility on a specific defendant. That question was not addressed in *Brimage*. When we determined that *Brimage* was to be given only limited retrospective application, we were referring to the rule of the case, that is, the invalidity of the Attorney General's plea-bargaining guidelines because of the intercounty disparity that they permitted. When the Court announced in *Brimage* that the decision would have limited retroactive application to Brimage himself, and all cases

pending final appeal where obviously the pleas had been entered and sentencing accomplished, our fundamental goal was to prevent a flood of litigants who already had been sentenced from seeking relief on the ground that the prior set of guidelines under which they pled guilty had been declared unlawful. *Cf. State v. Reyes,* 325 *N.J.Super.* 166, 169–70 n. 2, 738 *A.*2d 370 (App.Div.1999) ("It is obvious from the context of the Court's decision [in *Brimage* ] that the prospective aspect of the Court's holding was directed to sentences imposed under county guidelines before *Brimage* was decided, and for which no appeal was taken."). We did not address the question whether revised guidelines adopted in response to *Brimage* should be applied uniformly to all pending cases.

## III.

Whether the Brimage Guidelines should be applied to this defendant, who committed his offense pre-*Brimage* but pled guilty and was sentenced post-*Brimage,* is the precise issue in this case. We conclude that the Brimage Guidelines generally should be applied prospectively to all pending cases. That application is necessary to avoid the potential for arbitrary distinctions between counties made possible under the Attorney General's guidelines in effect prior to *Brimage.* However, a limited exception to the rule of uniform application is necessary to guard against an injustice in an individual case, such as this one, where application of the post-*Brimage* guidelines would result in a harsher minimum period of parole ineligibility for a defendant whose offense occurred pre-*Brimage.* In that instance, a defendant's sentence should be meted out in accordance with the pre-*Brimage* guidelines. Although those guidelines were impugned in *Brimage* because they allowed for arbitrary action in sentencing from county to county, it would be worse from an equitable standpoint to visit a harsher sentence on an individual defendant, whose offense was committed prior to *Brimage,* as a price for the cure of that legal infirmity.

We do not hold, however, that that exception is necessary because of the prohibitions of the *ex post facto* clauses of the Federal and State Constitutions. We regard the issue presented here as merely a question of clarification of our requirement in *Brimage* that the Attorney General develop new guidelines for use statewide. Thus, we decline to reach that constitutional question. *Donadio v. Cunningham*, 58 *N.J.* 309, 325–26, 277 *A.*2d 375 (1971) (noting rule that "a court should not reach and determine a constitutional issue unless absolutely imperative in the disposition of the litigation").[2] *But see Reyes, supra,* 325 *N.J.Super.* at 172, 738 *A.*2d 370 (holding that application of new statewide guidelines governing prosecutor's authority to waive mandatory minimum period of incarceration not violative of *ex post facto* clauses of New Jersey and United States Constitutions); *State v. Jimenez*, 266 *N.J.Super.* 560, 572, 630 *A.*2d 348 (App.Div.1993) (holding that guidelines that cured constitutionally defective Code provision governing mandatory penalties under CDRA did not violate *ex post facto* prohibitions).

Defendant committed his crime in February 1997, but his guilty plea did not occur until July 1998 and sentencing followed in September 1998. In pleading guilty, defendant accepted a plea offer tendered by the prosecutor pursuant to the Brimage Guidelines, which went into effect in May 1998. Thus, the structure of defendant's plea offer was controlled by the guidelines that were not effective until more than fifteen months after he committed his offense. Use of the Brimage Guidelines to govern defendant's plea bargain negatively affected defendant's sentence; those guidelines increased the punishment for defendant's crime relative to the plea-bargaining guidelines in place at the time of the

---

[2] In a different setting involving federal sentencing guidelines, the Third Circuit Court of Appeals in *United States v. Barel*, 939 *F.*2d 26, 43 (3d Cir.1991), similarly declined to reach the defendant's *ex post facto* arguments concerning the applicability of guidelines revised after the date of offense. In *Barel*, it was not necessary for the court to decide the issue in respect of the federal government's policy position that the more lenient earlier guidelines in effect at the time of offense would govern, insulating the defendant from prejudice. *Ibid.*

offense. The presumptive plea offer for defendant under the Brimage Guidelines is forty-two months of parole ineligibility, with a thirty-six-month minimum, while the Extended Term Guidelines provided a twenty-month minimum parole disqualifier. Defendant, therefore, could have received a plea offer comprised of a minimum of twenty months of parole ineligibility under the Extended Term Guidelines, but could receive no less than thirty-six months of parole ineligibility under the Brimage Guidelines. Application of the Brimage Guidelines to defendant therefore increased his minimum term of imprisonment under the plea offer. *But cf. State v. Mercedes,* 165 *N.J.* 131, 131, 754 *A.*2d 1208 (2000) (remanding matter for re-sentencing of defendant under more favorable Brimage Guidelines where offense and plea of guilty preceded *Brimage,* and sentencing occurred post-*Brimage* ); *State v. Castaing,* 321 *N.J.Super.* 292, 297, 728 *A.*2d 865 (App.Div.1999) (holding that defendant who was tried and convicted pre-*Brimage,* but sentenced post-*Brimage,* entitled to post-conviction waiver agreement negotiated pursuant to Brimage Guidelines).

We cannot countenance that result. As noted, we acknowledge the correctness of the Attorney General's approach that post-*Brimage* guidelines should apply generally to all pending cases irrespective of the date of the offense. That approach has much to commend it. It provides maximum protection to defendants from the potential arbitrariness in sentencing that could occur under the prior guidelines and provides for maximum uniformity in sentencing. However, those goals, although laudable, do not justify subjecting any defendant whose offense predates *Brimage* to a harsher penalty. As a matter of fairness and equity, defendants who committed offenses pre-*Brimage* and who would fare worse under post-*Brimage* guidelines should be sentenced in accordance with the guidelines in effect prior to *Brimage.* The holding in *Brimage* that was intended to ameliorate inequitable, arbitrary, and unfair treatment of defendants in sentencing cannot be permitted itself to become a vehicle for disadvantaging the limited universe of interstitial defendants with pre-*Brimage* of-

fenses but post-*Brimage* sentences who are subjected to harsher plea offers under the Brimage Guidelines.

The State argues that application of pre-*Brimage* guidelines to defendant's plea bargain would result in the prosecutor applying guidelines this Court had found deficient in *Brimage* because they allowed for intercounty disparity. The State contends that such a result fails to comport with the Court's goal in *Brimage* of eliminating intercounty plea-offer disparities. Under the facts of this case, however, those arguments carry insufficient force. Essex County, in which defendant was sentenced, had issued its own set of guidelines on February 26, 1997. *Implementation of Attorney General's Supplemental Directive for Prosecuting Cases Under the Comprehensive Drug Reform Act,* from Clifford Minor, Essex County Prosecutor, to All Assistant Prosecutors, Essex County Prosecutor's Office (Feb. 26, 1997) (Essex County Guidelines). The Essex County Guidelines deferred to the Attorney General's Extended Term Guidelines establishing statewide minimum plea offers in cases, such as defendant's, in which extended terms were sought. Accordingly, any concern about uniformity already is diminished. Furthermore, our ruling in *Brimage* implicitly contemplated that the pre-*Brimage* Extended Term Guidelines, despite their flaws, would continue to find application in certain cases while the Brimage Guidelines worked their way into comprehensive application. Pursuit of the salutary goal of uniformity should not be rushed at the expense of the arbitrary imposition on defendant of a harsher plea offer under the Brimage Guidelines than that available under the Extended Term Guidelines in effect at the time of his offense.

In conclusion, we create only a limited exception to the Attorney General's pronouncement that the Brimage Guidelines be applied to all pending cases. Only where such application would disadvantage a defendant whose criminal act occurred prior to the *Brimage* decision, and where a lesser sentence to a plea would result from the application of pre-*Brimage* guidelines, is an exception to be

allowed to the otherwise uniform rule. That exception, of its very nature, will not be a longstanding one.

## IV.

The judgment of the Appellate Division is reversed, and the case is remanded to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, LaVECCHIA and ZAZZALI—6.

*Opposed*—None.