# RECORD IMPOUNDED

## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0548-20

STATE OF NEW JERSEY
IN THE INTEREST OF J.D.,
a Juvenile.

_____

APPROVED FOR PUBLICATION
May 5, 2020
APPELLATE DIVISION

Argued February 23, 2021 – Decided May 5, 2021

Before Judges Fisher, Gilson, and Gummer.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket Nos. FJ-13-0137-20, FJ-13-0491-20 and FJ-13-0492-20.

Thomas C. Huth argued the cause for appellant (The Law Offices of Jonathan F. Marshall and Jeff Thakker, attorneys; Jeff Thakker, of counsel; Thomas C. Huth, on the briefs).

Nancy A. Hulett, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Nancy A. Hulett, of counsel and on the brief).

Mary Clare Patterson, admitted pursuant to Rule 1:21-3(b), argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Rutgers Criminal and Youth Justice Clinic, Rutgers Law, and American Civil Liberties Union of New Jersey Foundation, attorneys; Laura A. Cohen, Distinguished Clinical Professor of Law, of counsel and on the brief; Alexander Shalom and Jeanne LoCicero, on the brief).

Carol M. Henderson, Assistant Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Carol M. Henderson, of counsel and on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

In 2019, three women alleged that J.D. sexually assaulted them years earlier when they and J.D. were minors. The State filed juvenile delinquency complaints against J.D. and moved to waive certain charges to the Criminal Part to try J.D. as an adult on the alleged assaults that occurred when he was between the ages of fifteen and seventeen.

This appeal presents a question of first impression: whether the waiver procedures and hearing should be governed by the current statute, which became effective in March 2016, or by a hybrid of the statute at the time of the alleged offenses and the current statute. The trial court held that the current statute would govern.

On leave granted, J.D. argues that because all the waiver statutes are ameliorative, he should be allowed to select those parts of the repealed and current statutes that give him the greatest benefit. We hold that the current statute governs the waiver proceedings. Accordingly, we affirm.

A-0548-20

I.

J.D. was born in October 1990. He grew up in a household with his parents and several siblings, including two adopted sisters: K.D. and M.N. The adopted sisters are both approximately a year younger than J.D. M.N. was born in August 1991, and K.D. was born in February 1992.

In 2019, K.D. and M.N. alleged that J.D. had sexually assaulted them numerous times over the course of several years when they were all minors. They both gave statements to law enforcement personnel. In her statements, K.D. detailed that J.D. sexually assaulted her beginning when she was approximately ten or eleven years old and continuing until she was seventeen years old. According to K.D., the assaults included forced oral, vaginal, and anal penetrations.[1]

M.N. reported that J.D. sexually assaulted her several times when she was between the ages of ten and sixteen. The assaults included forced oral and vaginal penetrations.

Law enforcement personnel also interviewed D.M., who had dated J.D. when she was between the ages of fourteen and sixteen. D.M. reported that she

_____

[1] K.D. also alleged that another brother and a cousin had sexually assaulted her. This appeal involves only the allegations against J.D.; the record does not inform us of the status of the allegations against the other brother and cousin.

A-0548-20

had had sexual relations with J.D. while they were dating. She asserted that J.D. was physically abusive to her when she did not want to have sex with him. She described two occasions when J.D. started to have sexual intercourse with her, she told him to stop, but he did not. Instead, J.D. got angry, she became frightened, and although she did not want to continue, J.D. continued having sexual intercourse until he was finished.

In 2019 and 2020, J.D. was charged with delinquency in seven juvenile complaints. Some of the complaints issued in 2020 superseded complaints issued in 2019. Three of the complaints charged J.D. with sexual assaults involving the three victims that occurred between October 2005 and October 2008, when J.D. was between the ages of fifteen and seventeen. Those juvenile complaints alleged that if the offenses had been committed as an adult, they would constitute second-degree sexual assaults, N.J.S.A. 2C:14-2(c)(1). The four other juvenile complaints charged J.D. with sexual assaults committed prior to his fifteenth birthday.

On January 30, 2020, the State moved to waive from the Family Part and refer to the Criminal Part the three complaints charging J.D. with the sexual assaults that allegedly occurred when J.D. was between the ages of fifteen and seventeen. In preparation for the waiver hearing, an issue arose concerning

4

whether the hearing would be governed by the statute in place when the assaults allegedly occurred, N.J.S.A. 2A:4A-26, or the statute that became effective on March 1, 2016, N.J.S.A. 2A:4A-26.1, after the alleged assaults occurred.

After receiving briefs and hearing oral argument, the trial court issued an order on September 15, 2020, ruling that the waiver hearing will be governed by the current statute, N.J.S.A. 2A:4A-26.1.  In making that ruling, the court relied on the recent Supreme Court decision, State v. J.V., 242 N.J. 432 (2020).  In J.V., the Court held that a juvenile "who was waived to adult court, pled guilty, and was sentenced" before N.J.S.A. 2A:4A-26.1 "became effective cannot claim the benefit[s] of the new juvenile waiver statute."  Id. at 448.  The trial court reasoned that the J.V. Court's discussion of the prospective application of N.J.S.A. 2A:4A-26.1 meant that the statute was to govern all waiver proceedings after March 1, 2016.

Before the waiver hearing took place, we granted J.D. leave to appeal the September 15, 2020 order.  We also invited the Attorney General and the American Civil Liberties Union of New Jersey (ACLU) to participate as amici.  Both filed briefs and appeared for oral argument.  The ACLU's brief was submitted by the Rutgers Criminal and Youth Justice Clinic.

## II.

On appeal, J.D. argues that he should be allowed to proceed under N.J.S.A. 2A:4A-26(e), which allowed a juvenile to oppose waiver to adult court by showing amenability to rehabilitation before reaching nineteen years of age. J.D. articulates that argument as follows:

> WHETHER ONE CONFINES THE INQUIRY TO THE STATUTORY LANGUAGE, OR WHETHER ONE CONSIDERS THE PARENS PATRIAE POLICY UNDERLYING JUVENILE JUSTICE, AN ADULT WHO CAN PROVE REHABILITATION UNDER THE STANDARDS WHICH PREEXISTED N.J.S.A. 2A:4A-26.1 (WHEN THE ALLEGED DELINQUENT ACTS OCCURRED) SHOULD HAVE THE OPPORTUNITY TO DO SO; RETROACTIVE STATUTORY WAIVER IS ERRONEOUS AND UNJUST IN THIS INSTANCE.

The ACLU supports J.D.'s position and argues that because the current waiver statute is ameliorative, the family court should allow J.D. to try to show he was amenable to rehabilitation as allowed under N.J.S.A. 2A:4A-26(e), which was in effect at the time the alleged assaults were committed.

The prosecutor and Attorney General both argue the trial court correctly decided that the current waiver statute governs. They contend that that ruling is supported by the Supreme Court's decision in J.V., other case law, and the Savings Clause, N.J.S.A. 1:1-15.

A-0548-20

In reviewing a juvenile waiver decision, appellate courts normally assess "whether the correct legal standard has been applied, whether inappropriate factors have been considered, and whether the exercise of discretion constituted a 'clear error of judgment' in all of the circumstances." State v. R.G.D., 108 N.J. 1, 15 (1987) (citing State v. Humphreys, 89 N.J. 4, 13 (1982)). The issue before us, however, is a question of law: which statute governs the waiver proceedings. Accordingly, we conduct a de novo review. Ardan v. Bd. of Rev., 231 N.J. 589, 608 (2018); Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016).

We hold that the language of the current waiver statute, coupled with consideration of the Savings Clause, establishes that the current statute should govern J.D.'s waiver hearing. To give context to our holding, we begin with a brief overview of the prior and present waiver statutes.

## A.

"Over the years, the Legislature has revised the waiver statute on a number of occasions." State in the Interest of N.H., 226 N.J. 242, 249 (2016) (citations omitted). The two revisions most relevant to J.D.'s circumstances are the 2003 and 2016 statutory revisions. See L. 2003, c. 39, § 8; and L. 2015, c. 89, § 1. The waiver statute was also amended in 2008, but in ways irrelevant to the issues on this appeal.

A-0548-20

Under the versions of the waiver statute that existed between 2003 and 2015, a prosecutor had discretion to seek waiver of charges constituting serious crimes, including sexual assault committed by a juvenile fourteen years of age or older.  N.J.S.A. 2A:4A-26(a) (2003).  The Attorney General issued guidelines identifying seven factors prosecutors should consider in exercising that discretion.  John J. Farmer, Jr. & Paul H. Zoubek, Off. of the Att'y Gen., Juvenile Waiver Guidelines 5-6 (2000), https://www.nj.gov/oag/dcj/agguide/pdfs/AG-Juvenile-Waiver-Guidelines.pdf (the AG Guidelines); see also State in the Interest of Z.S., 464 N.J. Super. 507, 515-16 (App. Div. 2020) (discussing the evolution of the waiver statute).

The AG Guidelines "directed prosecutors filing a waiver motion to include a statement of reasons addressing the prosecution's consideration and the applicability of the factors."  J.V., 242 N.J. at 437 (citing the AG Guidelines, at 7).  Our Supreme Court required prosecutors to submit that written statement of reasons with the waiver motion, so that judges could "determine that the reasons for seeking waiver are not arbitrary."  State v. J.M., 182 N.J. 402, 419 (2005).

The prior waiver statute also included a provision allowing a juvenile who was fourteen or fifteen years old and who had been charged with serious crimes to try to demonstrate that he or she could be rehabilitated before turning nineteen

years old.  N.J.S.A. 2A:4A-26(e) (2003).  That rehabilitation showing was not available to juveniles who were age sixteen or older.  Ibid.  Specifically, N.J.S.A. 2A:4A-26(e) stated:

> If the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of [nineteen] substantially outweighs the reasons for waiver, waiver shall not be granted. This subsection shall not apply with respect to a juvenile [sixteen] years of age or older who is charged with committing any of the [enumerated] acts[, which if committed as an adult would constitute serious crimes].

In 2015, the Legislature enacted major revisions to the juvenile justice system, including a revamping of the waiver statute.  L. 2015, c. 89, § 1.  Section 26 of Title 2A:4A was repealed and replaced with Section 26.1.

The juvenile waiver statute that took effect on March 1, 2016 raised the age of eligibility for waiver from fourteen to fifteen years and mandated eleven factors for prosecutors to consider when seeking to waive a juvenile to adult court.  N.H., 226 N.J. at 251-52.  Those statutory factors "encompass and expand upon the factors listed in the [AG] Guidelines."  Id. at 252.  The factors include the juvenile's age and maturity, eligibility for special education, mental health status, and history of substance abuse or emotional instability.  N.J.S.A. 2A:4A-26.1(c)(3)(d), (e), and (j).

A-0548-20

The current waiver statute does not include the rehabilitation showing allowed by N.J.S.A. 2A:4A-26(e). Instead, the current statute requires the prosecutor to "offer proof of [the] juvenile's age and demonstrate probable cause that the juvenile committed an act listed in the statute. The State must also present evidence that it considered the relevant statutory factors, and its decision is reviewed for abuse of discretion." N.H., 226 N.J. at 257 (citing N.J.S.A. 2A:4A-26.1(b) to (c)).

B.

The issue on this appeal is not whether the current version of the waiver statute applies retroactively to J.D. J.D. seeks to use all provisions of the current statute and the repealed provision allowing a juvenile to try to demonstrate amenability to rehabilitation under N.J.S.A. 2A:4A-26(e). He argues that because the statutes were and are ameliorative, he should be able to take those portions that work best for him.

In determining whether a repealed provision of the waiver statute is available to J.D., our goal is to ascertain the intent of the Legislature. J.V., 242 N.J. at 442 (citing State v. S.B., 230 N.J. 62, 67 (2017)) (reiterating that "[t]he overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'"). That process begins

with the plain language of the statute.  Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012).

The current waiver statute is plain in its elimination of Section 26(e) and in not adding a similar, separate opportunity for the juvenile to prove amenability to rehabilitation.  Instead, the current statute provides a unitary process for all waiver motions.  N.J.S.A. 2A:4A-26.1.  In that regard, Section 26.1 mandates a probable cause hearing at which the court must also review the prosecutor's statement of reasons for seeking waiver.  Ibid.; see also N.H., 226 N.J. at 254-55.

Significantly, the Legislature codified the factors the prosecutor must consider and address in the statement of reasons submitted to the court.  N.J.S.A. 2A:4A-26.1(c)(3).  The Legislature also added new factors, including some meant to identify and protect vulnerable and disadvantaged juveniles.  See N.J.S.A. 2A:4A-26.1(c)(3)(a), (c), (f), (g), and (h).  We have already observed that those "new factors arguably allow some consideration of [a] juvenile's prospects for rehabilitation, at least implicitly, by requiring the prosecutor to assess a juvenile's 'age and maturity,' 'culpability,' 'criminal sophistication,' and prior history with the juvenile justice system."  Z.S., 464 N.J. Super. at 517.

Examined in full context, the repeal of Section 26(e) and the expansion of the factors to be considered by the prosecutor reflect a conscious choice by the Legislature to no longer require a separate consideration of the possibility of rehabilitation. That the Legislature was consciously eliminating a separate consideration of the possibility of rehabilitation is supported by the legislative history. In a statement concerning L. 2015, c. 89, § 1, the Assembly Appropriations Committee expressly recognized that the Legislature was eliminating "amenability hearing[s]" and "replac[ing them] with a streamlined process for determining whether a juvenile case should be transferred to an adult criminal court." Assemb. Appropriations Comm. Statement to S. 2003 2 (June 15, 2015).

In summary, considering the full context of the plain language in light of the repealed provisions reveals the Legislature's conscious choice to have the current version apply to all waiver hearings taking place after March 1, 2016, the effective date of the new statute. L. 2015, c. 89, § 1.

Accordingly, we hold that the rule of lenity does not allow J.D. to use both the repealed waiver statute and the current statute. The rule of lenity provides that "if a statutory ambiguity cannot be resolved by analysis of the relevant text and the use of extrinsic aids, the rule requires that the ambiguity be resolved in

favor of the defendant." State v. Regis, 208 N.J. 439, 451 (2011) (citing State v. Gelman, 195 N.J. 475, 482 (2008)). "[T]he rule of lenity is applied only if a statute is ambiguous, and that ambiguity is not resolved by a review of 'all sources of legislative intent.'" Id. at 452 (quoting State v. D.A., 191 N.J. 158, 165 (2007)). Section 26.1 is not ambiguous in eliminating the separate amenability hearing and replacing it with a unitary hearing for determining whether a juvenile case should be transferred to an adult criminal court.

The Savings Clause also supports a prospective application of the current waiver statute. That Clause generally precludes retroactive application of legislation that amends or repeals a substantive statute, or part of a statute, unless the amendment or repeal itself expressly states that it is to have a different application. The Savings Clause also states that revised statutes are generally to be applied as they "shall relate to mere matters of practice or mode of procedure." N.J.S.A. 1:1-15.

The language of the Savings Clause explains that procedural changes are generally not applied retroactively to concluded proceedings but do apply to proceedings taking place after the effective date of the new statute:

> [W]hen the Revised Statutes, or other act by which such repeal or alteration is effectuated, shall relate to mere matters of practice or mode of procedure, the proceedings had thereafter on the indictment or in the

> prosecution for such offenses, liabilities, penalties or forfeitures shall be in such respects, as far as is practicable, in accordance with the provisions of the Revised Statutes or such subsequent act.
>
> [Ibid.]

Although a waiver hearing is not always merely a matter of "practice or mode of procedure," the procedures to be followed should be uniform and not based on a hybrid process of selecting some procedures from a repealed statute.

## C.

The question presented to us on this appeal is not directly answered by existing case law. As already noted, the issue is not whether the current statute applies retroactively.

The holding in J.V. does not directly control this case. See 242 N.J. at 448. There, J.V. had been waived to adult court, pled guilty, and was sentenced before Section 26.1 became effective. Ibid. Our Supreme Court ruled that the new provisions under the revised statute should not be applied retroactively to J.V. Ibid.

The holding in State in the Interest of J.F. also does not directly govern this case. 446 N.J. Super. 39, 55-57 (App. Div. 2016). In J.F. we held that Section 26.1's new age-eligibility provisions are to be retroactively applied. Ibid. There, the State had filed an interlocutory appeal challenging the Family

14

judge's refusal to waive a juvenile accused of committing murder at age fourteen to adult court. Id. at 41-42. At the time of the State's waiver motion, N.J.S.A. 2A:4A-26 governed waiver proceedings and permitted the State to seek the involuntary waiver of a fourteen-year-old juvenile. Id. at 43. Following a hearing, the Family judge denied the State's application, finding that the juvenile had met his burden under the previous waiver statute by proving the probability of his rehabilitation and that the probability of rehabilitation outweighed the State's reasons for waiver. Id. at 42. By the time the Family judge made his decision, the Legislature had enacted Section 26.1, but that section was not yet in effect. Id. at 52. We ruled that the new statute was ameliorative and that the minimum age eligibility requirement should be applied retroactively. Id. at 56.

The discussions in J.V. and J.F. addressing when a criminal statute should be applied prospectively and when it should be applied retroactively are helpful. See J.V., 242 N.J. at 442-44; see also J.F., 446 N.J. Super. at 53-55. Nevertheless, those discussions and the holdings in those cases do not directly apply to or control this case.

Citing to State v. Fowlkes, 169 N.J. 387 (2001), and In re Smigelski, 30 N.J. 513 (1959), J.D. and the ACLU argue that J.D. should get the benefit of both statutes, particularly the provisions according him the most relief. In

A-0548-20

Fowlkes, the Court considered whether the Brimage[2] guidelines, which established a uniform statewide sentencing regime for certain drug offenses, would apply to a defendant who committed an offense before the new guidelines took effect, but who was sentenced after the guidelines became effective. 169 N.J. at 396. The Court recognized that the new guidelines were designed to "ameliorate inequitable, arbitrary, and unfair treatment" but would subject Fowlkes to a more severe penalty. Id. at 397. Consequently, the Court reasoned that "[a]s a matter of fairness and equity, defendants who committed offenses pre-Brimage and who would fare worse under post-Brimage guidelines should be sentenced in accordance with the guidelines in effect prior to Brimage." Ibid.

The proceedings in Smigelski were complex and involved the changing law concerning when a juvenile could be prosecuted as an adult. 30 N.J. at 517-20. There, the Court allowed the juvenile to elect whether an ameliorative law concerning commitments of juveniles would be retroactively applied to his commitment. Id. at 527. At the time the juvenile committed his offense of murder and when he was committed, the law allowed an indefinite commitment. Id. at 517, 519. Thereafter, however, the law changed, and a juvenile could be committed to a term of confinement only for a defined period. Id. at 526-27.

---

[2] State v. Brimage, 153 N.J. 1, 23 (1998).

On review of the denial of a writ of habeas corpus, the Court held that the juvenile could decide whether the repealed or new statute would apply to his commitment, reasoning that the "choice should rest . . . with the affected party, and applicability should not be compellable by the State." Id. at 527.

Neither Fowlkes nor Smigelski answered the question presented to us. Their facts and procedural histories are distinguishable. Moreover, in neither case did the Court suggest — as J.D. and the ACLU argue here — that a juvenile can pick and choose provisions from both repealed and revised statutes. Accordingly, those cases do not support J.D.'s argument that he should be allowed to use both the repealed and current waiver statutes.

D.

Finally, we point out some practical effects of our ruling. J.D. is not losing a significant procedure. He incorrectly argues that, under the prior statute, he would be able to show that he was amenable to rehabilitation even for the charges that occurred when he was sixteen and seventeen years old. Section 26(e) was clear in stating that juveniles who were sixteen or seventeen years old could not argue that they were amenable to rehabilitation for serious crimes, including sexual assault. N.J.S.A. 2A:4A-26(e).

17

In addition, it is clear from J.D.'s papers that he intended to argue that he had already demonstrated amenability because he did not have any criminal charges until these matters arose. Because he would only be able to make that argument concerning the charges when he was fifteen, the charges that arose when he was sixteen and seventeen would make an amenability showing more difficult. It would certainly eliminate the argument J.D. apparently wanted to make; that his lack of a criminal record demonstrates his amenability to rehabilitation.

Finally, J.D. has not articulated any good public policy reason explaining why he should obtain an advantage that is no longer available to juveniles. In other words, J.D. wants all the advantages under the current waiver statute, as well as the ability to show amenability to rehabilitation. If a fifteen-year-old was currently charged with the same offenses as J.D., that juvenile would not have the opportunity to prove amenability to rehabilitation in a separate hearing. The delay in the disclosures of the allegations against J.D. should not afford him a procedure that is no longer available to juveniles.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0548-20